(Slip Opinion)　　　OCTOBER  TERM,  2007　　　1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## JOHN R. SAND & GRAVEL CO. *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 06–1164.　Argued November 6, 2007—Decided January 8, 2008

In a Court of Federal Claims action, petitioner argued that various federal activities on land for which it held a mining lease amounted to an unconstitutional taking of its leasehold rights.  The Government initially asserted that the claims were untimely under the court of claims statute of limitations, but later effectively conceded that issue and won on the merits.  Although the Government did not raise timeliness on appeal, the Federal Circuit addressed the issue *sua sponte,* finding the action untimely.

*Held:* The court of claims statute of limitations requires *sua sponte* consideration of a lawsuit's timeliness, despite the Government's waiver of the issue.  Pp. 2–9.

　(a) This Court has long interpreted the statute as setting out a more absolute, "jurisdictional" limitations period.  For example, in 1883, the Court concluded with regard to the current statute's predecessor that "it [was] the duty of the court to raise the [timeliness] question whether it [was] done by plea or not."  *Kendall* v. *United States*, 107 U. S. 123, 125–126.  See also *Finn* v. *United States*, 123 U. S. 227, and *Soriano* v. *United States*, 352 U. S. 270.  That the statute's language has changed slightly since 1883 makes no difference here, for there has been no expression of congressional intent to change the underlying substantive law.  Pp. 2–6.

　(b) Thus, petitioner can succeed only by convincing the Court that it has overturned, or should overturn, its earlier precedent.  Pp. 6–9.

　(1) The Court did not do so in *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, where it applied equitable tolling to a limitations statute governing employment discrimination claims against the Government.  While the *Irwin Court* noted the similarity of that statute to the court of claims statute, the civil rights statute is unlike

the present statute in the key respect that the Court had not previ-
ously provided a definitive interpretation. Moreover, the *Irwin* Court
mentioned *Soriano,* which reflects the particular interpretive history
of the court of claims statute, but said nothing about overturning it or
any other case in that line. Finally, just as an equitable tolling pre-
sumption could be rebutted by statutory language demonstrating
Congress' contrary intent, it should be rebutted by a definitive earlier
interpretation finding a similar congressional intent. Language in
*Franconia Associates* v. *United States*, 536 U. S. 129, 145, describing
the court of claims statute as "unexceptional" and citing *Irwin* for the
proposition "that limitations principles should generally apply to the
Government in the same way that they apply to private parties" re-
fers only to the statute's claims-accrual rule and adds little or noth-
ing to petitioner's contention that *Irwin* overruled earlier cases.
Pp. 6–7.

    (2) *Stare decisis* principles require rejection of petitioner's argu-
ment that the Court should overturn *Kendall, Finn, Soriano,* and re-
lated cases. Any anomaly such old cases and *Irwin* together create is
not critical, but simply reflects a different judicial assumption about
the comparative weight Congress would likely have attached to com-
peting national interests. Moreover, the earlier cases do not produce
"unworkable" law, see, *e.g., United States* v. *International Business
Machines Corp.*, 517 U. S. 843, 856. *Stare decisis* in respect to statu-
tory interpretation also has "special force." Congress, which "remains
free to alter what [the Court has] done," *Patterson* v. *McLean Credit
Union*, 491 U. S. 164, 172–173, has long acquiesced in the interpreta-
tion given here. Finally, even if the Government cannot show detri-
mental reliance on the earlier cases, reexamination of well-settled
precedent could nevertheless prove harmful. Overturning a decision
on the belief that it is no longer "right" would inevitably reflect a will-
ingness to reconsider others, and such willingness could itself
threaten to substitute disruption, confusion, and uncertainty for nec-
essary legal stability. Pp. 8–9.

457 F. 3d 1345, affirmed.

    BREYER, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and SCALIA, KENNEDY, SOUTER, THOMAS, and ALITO, JJ., joined.
STEVENS, J., filed a dissenting opinion, in which GINSBURG, J., joined.
GINSBURG, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

### No. 06–1164

## JOHN R. SAND & GRAVEL COMPANY, PETITIONER *v.* UNITED STATES

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[January 8, 2008]

JUSTICE BREYER delivered the opinion of the Court.

The question presented is whether a court must raise on its own the timeliness of a lawsuit filed in the Court of Federal Claims, despite the Government's waiver of the issue. We hold that the special statute of limitations governing the Court of Federal Claims requires that *sua sponte* consideration.

I

Petitioner John R. Sand & Gravel Company filed an action in the Court of Federal Claims in May 2002. The complaint explained that petitioner held a 50-year mining lease on certain land. And it asserted that various Environmental Protection Agency activities on that land (involving, *e.g.,* the building and moving of various fences) amounted to an unconstitutional taking of its leasehold rights.

The Government initially asserted that petitioner's several claims were all untimely in light of the statute providing that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after

such claim first accrues." 28 U. S. C. §2501. Later, however, the Government effectively conceded that certain claims were timely. See App. 37a–39a (Government's pretrial brief). The Government subsequently won on the merits. See 62 Fed. Cl. 556, 589 (2004).

Petitioner appealed the adverse judgment to the Court of Appeals for the Federal Circuit. See 457 F. 3d 1345, 1346 (2006). The Government's brief said nothing about the statute of limitations, but an *amicus* brief called the issue to the court's attention. See *id.,* at 1352. The court considered itself obliged to address the limitations issue, and it held that the action was untimely. *Id.,* at 1353–1360. We subsequently agreed to consider whether the Court of Appeals was right to ignore the Government's waiver and to decide the timeliness question. 550 U. S. ___ (2007).

## II

Most statutes of limitations seek primarily to protect defendants against stale or unduly delayed claims. See, *e.g., United States* v. *Kubrick*, 444 U. S. 111, 117 (1979). Thus, the law typically treats a limitations defense as an affirmative defense that the defendant must raise at the pleadings stage and that is subject to rules of forfeiture and waiver. See Fed. Rules Civ. Proc. 8(c)(1), 12(b), 15(a); *Day* v. *McDonough*, 547 U. S. 198, 202 (2006); *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 393 (1982). Such statutes also typically permit courts to toll the limitations period in light of special equitable considerations. See, *e.g.*, *Rotella* v. *Wood*, 528 U. S. 549, 560–561 (2000); *Zipes, supra*, at 393; see also *Cada* v. *Baxter Healthcare Corp.*, 920 F. 2d 446, 450–453 (CA7 1990).

Some statutes of limitations, however, seek not so much to protect a defendant's case-specific interest in timeliness as to achieve a broader system-related goal, such as facilitating the administration of claims, see, *e.g.*, *United States*

v. *Brockamp*, 519 U. S. 347, 352–353 (1997), limiting the scope of a governmental waiver of sovereign immunity, see, *e.g.*, *United States* v. *Dalm*, 494 U. S. 596, 609–610 (1990), or promoting judicial efficiency, see, *e.g.*, *Bowles* v. *Russell*, 551 U. S. \_\_\_ , \_\_\_–\_\_\_ (2007) (slip op., at 7–8). The Court has often read the time limits of these statutes as more absolute, say as requiring a court to decide a timeliness question despite a waiver, or as forbidding a court to consider whether certain equitable considerations warrant extending a limitations period. See, *e.g., ibid.;* see also *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 514 (2006). As convenient shorthand, the Court has sometimes referred to the time limits in such statutes as "jurisdictional." See, *e.g.*, *Bowles*, *supra*, at \_\_\_ (slip op., at 5).

This Court has long interpreted the court of claims limitations statute as setting forth this second, more absolute, kind of limitations period.

### A

In *Kendall* v. *United States*, 107 U. S. 123 (1883), the Court applied a predecessor of the current 6-year bar to a claim that had first accrued in 1865 but that the plaintiff did not bring until 1872. *Id.*, at 124; see also Act of Mar. 3, 1863, §10, 12 Stat. 767 (Rev. Stat. §1069). The plaintiff, a former Confederate States employee, had asked for equitable tolling on the ground that he had not been able to bring the suit until Congress, in 1868, lifted a previously imposed legal disability. See 107 U. S., at 124–125. But the Court denied the request. *Id.,* at 125–126. It did so not because it thought the equities ran against the plaintiff, but because the statute (with certain listed exceptions) did not permit tolling. Justice Harlan, writing for the Court, said the statute was "jurisdiction[al]," that it was not susceptible to judicial "engraft[ing]" of unlisted disabilities such as "sickness, surprise, or inevitable accident," and that "*it [was] the duty of the court to raise the*

*[timeliness] question whether it [was] done by plea or not."* *Ibid.* (emphasis added).

Four years later, in *Finn* v. *United States*, 123 U. S. 227 (1887), the Court found untimely a claim that had originally been filed with a Government agency, but which that agency had then voluntarily referred by statute to the Court of Claims. *Id.,* at 229–230 (citing Act of June 25, 1868, §7, 15 Stat. 76–77); see also Rev. Stat. §§1063–1065. That Government reference, it might have been argued, amounted to a waiver by the Government of any limitations-based defense. Cf. *United States* v. *Lippitt*, 100 U. S. 663, 669 (1880) (reserving the question of the time bar's application in such circumstances). The Court nonetheless held that the long (over 10-year) delay between the time the claim accrued and the plaintiff's filing of the claim before the agency made the suit untimely. *Finn*, 123 U. S., at 232. And as to any argument of Government waiver or abandonment of the time-bar defense, Justice Harlan, again writing for the Court, said that the ordinary legal principle that "limitation . . . is a defence [that a defendant] must plead . . . *has no application to suits in the Court of Claims against the United States." Id.* at 232–233 (emphasis added).

Over the years, the Court has reiterated in various contexts this or similar views about the more absolute nature of the court of claims limitations statute. See *Soriano* v. *United States*, 352 U. S. 270, 273–274 (1957); *United States* v. *Greathouse*, 166 U. S. 601, 602 (1897); *United States* v. *New York*, 160 U. S. 598, 616–619 (1896); *De Arnaud* v. *United States*, 151 U. S. 483, 495–496 (1894).

## B

The statute's language has changed slightly since *Kendall* was decided in 1883, but we do not see how any changes in language make a difference here. The only

arguably pertinent linguistic change took place during the 1948 recodification of Title 28. See §2501, 62 Stat. 976. Prior to 1948, the statute said that "[e]very claim . . . *cognizable by* the Court of Claims, shall be forever barred" unless filed within six years of the time it first accrues. Rev. Stat. §1069 (emphasis added); see also Act of Mar. 3, 1911, §156, 36 Stat. 1139 (reenacting the statute without any significant changes). Now, it says that "[e]very claim of which" the Court of Federal Claims "*has jurisdiction* shall be barred" unless filed within six years of the time it first accrues. 28 U. S. C. §2501 (emphasis added).

This Court does not "presume" that the 1948 revision "worked a change in the underlying substantive law 'unless an intent to make such a change is clearly expressed.'" *Keene Corp.* v. *United States*, 508 U. S. 200, 209 (1993) (quoting *Fourco Glass Co.* v. *Transmirra Products Corp.*, 353 U. S. 222, 227 (1957) (alterations omitted)); see also No. 308, 80th Cong., 1st Sess., pp. 1–8 (1947) (hereinafter Rep. No. 308) (revision sought to codify, not substantively modify, existing law); Barron, The Judicial Code: 1948 Revision, 8 F. R. D. 439 (1948) (same). We can find no such expression of intent here. The two linguistic forms ("cognizable by"; "has jurisdiction") mean about the same thing. See Black's Law Dictionary 991 (4th ed. 1951) (defining "jurisdiction" as "the authority by which courts and judicial officers take *cognizance of* and decide cases" (emphasis added)); see also Black's Law Dictionary 1038 (3d ed. 1933) (similarly using the term "cognizance" to define "jurisdiction"). Nor have we found any suggestion in the Reviser's Notes or anywhere else that Congress intended to change the prior meaning. See Rep. No. 308, at A192 (Reviser's Note); Barron, *supra*, at 446 (Reviser's Notes specify where change was intended). Thus, it is not surprising that nearly a decade *after* the revision, the Court, citing *Kendall,* again repeated that the statute's limitations period was "jurisdiction[al]" and not suscepti-

ble to equitable tolling. See *Soriano, supra,* at 273–274, 277.

## III

In consequence, petitioner can succeed only by convincing us that this Court has overturned, or that it should now overturn, its earlier precedent.

### A

We cannot agree with petitioner that the Court already has overturned the earlier precedent. It is true, as petitioner points out, that in *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89 (1990), we adopted "a more general rule" to replace our prior ad hoc approach for determining whether a Government-related statute of limitations is subject to equitable tolling—namely, "that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.*, at 95–96. It is also true that *Irwin*, using that presumption, found equitable tolling applicable to a statute of limitations governing employment discrimination claims against the Government. See *id.,* at 96; see also 42 U. S. C. §2000e–16(c) (1988 ed.). And the Court noted that this civil rights statute was linguistically similar to the court of claims statute at issue here. See *Irwin*, *supra*, at 94–95.

But these few swallows cannot make petitioner's summer. That is because *Irwin* dealt with a different limitations statute. That statute, while similar to the present statute in language, is unlike the present statute in the key respect that the Court had not previously provided a definitive interpretation. Moreover, the Court, while mentioning a case that reflects the particular interpretive history of the court of claims statute, namely *Soriano*, 352 U. S. 270*,* says nothing at all about overturning that or any other case in that line. See 498 U. S., at 94–95.

Courts do not normally overturn a long line of earlier cases without mentioning the matter. Indeed, *Irwin* recognized that it was announcing a general prospective rule, see *id.,* at 95, which does not imply revisiting past precedents.

Finally, *Irwin* adopted a "*rebuttable* presumption" of equitable tolling. *Ibid.* (emphasis added). That presumption seeks to produce a set of statutory interpretations that will more accurately reflect Congress' likely meaning in the mine run of instances where it enacted a Government-related statute of limitations. But the word "rebuttable" means that the presumption is not conclusive. Specific statutory language, for example, could rebut the presumption by demonstrating Congress' intent to the contrary. And if so, a definitive earlier interpretation of the statute, finding a similar congressional intent, should offer a similarly sufficient rebuttal.

Petitioner adds that in *Franconia Associates* v. *United States*, 536 U. S. 129 (2002), we explicitly considered the court of claims limitations statute, we described the statute as "unexceptional," and we cited *Irwin* for the proposition "that limitations principles should generally apply to the Government in the same way that they apply to private parties." 536 U. S.*,* at 145 (internal quotation marks omitted). But we did all of this in the context of rejecting an argument by the Government that the court of claims statute embodies a special, earlier-than-normal, rule as to when a claim first accrues. *Id.*, at 144–145. The quoted language thus refers only to the statute's claims-accrual rule and adds little or nothing to petitioner's contention that *Irwin* overruled our earlier cases—a contention that we have just rejected.

B

Petitioner's argument must therefore come down to an invitation now to reject or to overturn *Kendall, Finn,*

*Soriano*, and related cases. In support, petitioner can claim that *Irwin* and *Franconia* represent a turn in the course of the law and can argue essentially as follows: The law now requires courts, when they interpret statutes setting forth limitations periods in respect to actions against the Government, to place greater weight upon the equitable importance of treating the Government like other litigants and less weight upon the special governmental interest in protecting public funds. Cf. *Irwin*, *supra*, at 95–96. The older interpretations treated these interests differently. Those older cases have consequently become anomalous. The Government is unlikely to have relied significantly upon those earlier cases. Hence the Court should now overrule them.

Basic principles of *stare decisis,* however, require us to reject this argument. Any anomaly the old cases and *Irwin* together create is not critical; at most, it reflects a different judicial assumption about the comparative weight Congress would likely have attached to competing legitimate interests. Moreover, the earlier cases lead, at worst, to different interpretations of different, but similarly worded, statutes; they do not produce "unworkable" law. See *United States* v. *International Business Machines Corp.*, 517 U. S. 843, 856 (1996) (internal quotation marks omitted); *California* v. *FERC*, 495 U. S. 490, 499 (1990). Further, *stare decisis* in respect to statutory interpretation has "special force," for "Congress remains free to alter what we have done." *Patterson* v. *McLean Credit Union*, 491 U. S. 164, 172–173 (1989); see also *Watson* v. *United States*, *ante*, at 8. Additionally, Congress has long acquiesced in the interpretation we have given. See *ibid.;* *Shepard* v. *United States*, 544 U. S. 13, 23 (2005).

Finally, even if the Government cannot show detrimental reliance on our earlier cases, our reexamination of well-settled precedent could nevertheless prove harmful. Justice Brandeis once observed that "in most matters it is

more important that the applicable rule of law be settled than that it be settled right." *Burnet* v. *Coronado Oil & Gas Co.*, 285 U. S. 393, 406 (1932) (dissenting opinion). To overturn a decision settling one such matter simply because we might believe that decision is no longer "right" would inevitably reflect a willingness to reconsider others. And that willingness could itself threaten to substitute disruption, confusion, and uncertainty for necessary legal stability. We have not found here any factors that might overcome these considerations.

## IV

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 06–1164

———————

## JOHN R. SAND & GRAVEL COMPANY, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[January 8, 2008]

JUSTICE STEVENS, with whom JUSTICE GINSBURG joins, dissenting.

Statutes of limitations generally fall into two broad categories: affirmative defenses that can be waived and so-called "jurisdictional" statutes that are not subject to waiver or equitable tolling. For much of our history, statutes of limitations in suits against the Government were customarily placed in the latter category on the theory that conditions attached to a waiver of sovereign immunity "must be strictly observed and exceptions thereto are not to be implied." *Soriano* v. *United States*, 352 U. S. 270, 276 (1957); see also *Finn* v. *United States,* 123 U. S. 227, 232–233 (1887); *Kendall* v. *United States,* 107 U. S. 123, 125–126 (1883). But that rule was ignored—and thus presumably abandoned—in *Honda* v. *Clark*, 386 U. S. 484 (1967),[1] and *Bowen* v. *City of New York*, 476 U. S. 467 (1986).[2]

———————

[1] In *Honda,* we concluded, as to petitioners' attempts to recover assets that had been seized upon the outbreak of hostilities with Japan, that it was "consistent with the overall congressional purpose to apply a traditional equitable tolling principle, aptly suited to the particular facts of this case and nowhere eschewed by Congress." 386 U. S., at 501.

[2] In *Bowen,* we permitted equitable tolling of the 60-day requirement for challenging the denial of disability benefits under the Social Secu-

In *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95–96 (1990), we followed the lead of *Bowen* (and, by extension, *Honda*), and explicitly replaced the *Soriano* rule with a rebuttable presumption that equitable tolling rules "applicable to suits against private defendants should also apply to suits against the United States."[3] We acknowledged that "our previous cases dealing with the effect of time limits in suits against the Government [had] not been entirely consistent," 498 U. S., at 94, and we determined that "a continuing effort on our part to decide each case on an ad hoc basis . . . would have the disadvantage of continuing unpredictability without the corresponding advantage of greater fidelity to the intent of Congress," *id.,* at 95. We therefore crafted a background rule that reflected "a realistic assessment of legislative intent," and also provided "a practically useful principle of interpretation." *Ibid.*

Our decision in *Irwin* did more than merely "mentio[n]" *Soriano*, *ante,* at 7; rather, we expressly declined to follow that case. We noted that the limitations language at issue in *Irwin* closely resembled the text we had confronted in *Soriano;* although we conceded that "[a]n argument [could] undoubtedly be made" that the statutes were distinguish-

---

rity Act. We cautioned that "we must be careful not to assume the authority to narrow the waiver that Congress intended, or construe the waiver unduly restrictively." 476 U. S., at 479 (citation and internal quotation marks omitted).

[3] During the *Irwin* oral arguments, several Members of the Court remarked on the need to choose between the *Soriano* line of cases and the approach taken in cases like *Bowen*. See Tr. of Oral Arg., O. T. 1990, No. 89–5867, pp. 25–26 ("Question: '[W]hat do you make of our cases which seem to go really in different directions. The *Bowen* case, which was unanimous and contains language in it that says statutory time limits are traditionally subject to equitable tolling, and other cases like maybe *Soriano* . . . which point in the other direction[?]'"); see also *id.,* at 8 ("Question: '. . . I think we sort of have to choose between *Soriano* and *Bowen,* don't you think?'").

able, we were "not persuaded that the difference between them [was] enough to manifest a different congressional intent with respect to the availability of equitable tolling," 498 U. S., at 95. Having found the two statutes functionally indistinguishable, we nevertheless declined the Government's invitation to follow *Soriano,* and we did not so much as cite *Kendall* or *Finn*. Instead, we adopted "a more general rule to govern the applicability of equitable tolling in suits against the Government," 498 U. S., at 95, and we applied the new presumption in favor of equitable tolling to the case before us.[4] Nothing in the framing of our decision to adopt a "general rule" to govern the availability of equitable tolling in suits against the Government, *ibid.,* suggested a carve-out for statutes we had already held ineligible for equitable tolling, pursuant to the approach that we had previously abandoned in *Honda* and *Bowen*, and definitively rejected in *Irwin*.

Indeed, in his separate opinion in *Irwin*, Justice White noted that that the decision was not only inconsistent with our prior cases but also that it "directly overrule[d]" *Soriano*. 498 U. S., at 98 (opinion concurring in part and concurring in judgment). Neither the Court's opinion nor my separate opinion disagreed with that characterization

—————————

[4] In the years since we decided *Irwin*, we have applied its rule in a number of statutory contexts. See, *e.g., Scarborough* v. *Principi,* 541 U. S. 401, 420–423 (2004) (applying the rule of *Irwin* and finding that an application for fees under the Equal Access to Justice Act, 28 U. S. C. §2412(d)(1)(A), should be permitted to be amended out of time). Most significantly, in *Franconia Associates* v. *United States,* 536 U. S. 129, 145 (2002), we affirmed, in the context of 28 U. S. C. §2501, the rule that "limitations principles should generally apply to the Government 'in the same way that' they apply to private parties" (citing *Irwin,* 498 U. S., at 95). Although the Government is correct that the question presented by *Franconia* was when a claim accrued under §2501, our reliance on *Irwin* undermines the majority's suggestion that *Irwin* has no bearing on statutes that have previously been the subject of judicial construction.

of our holding.  The attempt of the Court today, therefore, to cast petitioner's argument as an entreaty to overrule *Soriano,* as well as *Kendall* and *Finn*—and its response that "[b]asic principles of *stare decisis* . . . require us to reject this argument," *ante,* at 8—has a hollow ring.  If the doctrine of *stare decisis* supplied a clear answer to the question posed by this case—or if the Government could plausibly argue that it had relied on *Soriano* after our decision in *Irwin*—I would join the Court's judgment, despite its unwisdom.[5]  But I do not agree with the majority's reading of our cases.  It seems to me quite plain that *Soriano* is no longer good law, and if there is in fact ambiguity in our cases, it ought to be resolved in favor of clarifying the law, rather than preserving an anachronism whose doctrinal underpinnings were discarded years ago.[6]

---

[5] The majority points out quite rightly, *ante,* at 8, that the doctrine of *stare decisis* has "'special force'" in statutory cases.  See *Patterson* v. *McLean Credit Union,* 491 U. S. 164, 172–173 (1989).  But the doctrine should not prevent us from acknowledging when we have already overruled a prior case, even if we failed to say so explicitly at the time. In *Rasul* v. *Bush,* 542 U. S. 466 (2004), for example, we explained that in *Braden* v. *30th Judicial Circuit Court of Ky.*, 410 U. S. 484 (1973), we had overruled so much of *Ahrens* v. *Clark,* 335 U. S. 188 (1948), as found that the habeas petitioners' presence within the territorial reach of the district court was a jurisdictional prerequisite.  *Braden* held, contrary to *Ahrens,* that a prisoner's presence within the district court's territorial reach was *not* an "inflexible jurisdictional rule," 410 U. S., at 500.  *Braden* nowhere stated that it was overruling *Ahrens,* although Justice Rehnquist began his dissent by noting: "Today the Court overrules *Ahrens* v. *Clark.*"  410 U. S., at 502.  Thirty years later we acknowledged in *Rasul* what was by then clear: *Ahrens* was no longer good law.  542 U. S., at 478–479, and n. 9.

Moreover, the logic of the "special force" of *stare decisis* in the statutory context is that "Congress remains free to alter what we have done," *Patterson,* 491 U. S., at 172–173.  But the amendment of an obscure statutory provision is not a high priority for a busy Congress, and we should remain mindful that enactment of legislation is by no means a cost-free enterprise.

[6] See Holmes, *The Path of the Law,* 10 Harv. L. Rev. 457, 469 (1897)

With respect to provisions as common as time limitations, Congress, in enacting statutes, and judges, in applying them, ought to be able to rely upon a background rule of considerable clarity. *Irwin* announced such a rule, and I would apply that rule to the case before us.[7]  Because today's decision threatens to revive the confusion of our pre-*Irwin* jurisprudence, I respectfully dissent.

———————

("It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past").

[7] The majority does gesture toward an application of *Irwin,* contending that even if *Irwin*'s rule is apposite, the presumption of congressional intent to allow equitable tolling is rebutted by this Court's "definitive earlier interpretation" of §2501, *ante,* at 7. But the majority's application of the *Irwin* rule is implausible, since *Irwin* itself compared the language of §2501 with the limitations language of Title VII of the Civil Rights Act of 1964, and found that the comparison did *not* reveal "a different congressional intent with respect to the availability of equitable tolling," 498 U. S., at 95.

# SUPREME COURT OF THE UNITED STATES

No. 06–1164

JOHN R. SAND & GRAVEL COMPANY, PETITIONER *v.*
UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[January 8, 2008]

JUSTICE GINSBURG, dissenting.

I agree that adhering to *Kendall*, *Finn*, and *Soriano* is irreconcilable with the reasoning and result in *Irwin*, and therefore join JUSTICE STEVENS' dissent. I write separately to explain why I would regard this case as an appropriate occasion to revisit those precedents even if we had not already "directly overrule[d]" them. Cf. *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 98 (1990) (White, J., concurring in part and concurring in judgment).

*Stare decisis* is an important, but not an inflexible, doctrine in our law. See *Burnet* v. *Coronado Oil & Gas Co.*, 285 U. S. 393, 405 (1932) (Brandeis, J., dissenting) ("*Stare decisis* is not . . . a universal, inexorable command."). The policies underlying the doctrine—stability and predictability—are at their strongest when the Court is asked to change its mind, though nothing else of significance has changed. See Powell, Stare Decisis and Judicial Restraint, 47 Wash. & Lee L. Rev. 281, 286–287 (1990). As to the matter before us, our perception of the office of a time limit on suits against the Government has changed significantly since the decisions relied upon by the Court. We have recognized that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United

States," *Irwin*, 498 U. S., at 95–96, and that "limitations principles should generally apply to the Government in the same way that they apply to private parties," *Franconia Associates* v. *United States*, 536 U. S. 129, 145 (2002) (internal quotation marks omitted).  See also *Scarborough* v. *Principi*, 541 U. S. 401, 420–422 (2004).  It damages the coherence of the law if we cling to outworn precedent at odds with later, more enlightened decisions.

I surely do not suggest that overruling is routinely in order whenever a majority disagrees with a past decision, and I acknowledge that "[c]onsiderations of *stare decisis* have special force in the area of statutory interpretation," *Patterson* v. *McLean Credit Union*, 491 U. S. 164, 172 (1989).  But concerns we have previously found sufficiently weighty to justify revisiting a statutory precedent counsel strongly in favor of doing so here.  First, overruling *Kendall* v. *United States*, 107 U. S. 123 (1883), *Finn* v. *United States*, 123 U. S. 227 (1887), and *Soriano* v. *United States*, 352 U. S. 270 (1957), would, as the Court concedes, see *ante*, at 8, "achieve a uniform interpretation of similar statutory language," *Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U. S. 477, 484 (1989). Second, we have recognized the propriety of revisiting a decision when "intervening development of the law" has "removed or weakened [its] conceptual underpinnings." *Patterson*, 491 U. S., at 173.  *Irwin* and *Franconia*—not to mention our recent efforts to apply the term "jurisdictional" with greater precision, see, *e.g., Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 515–516 (2006)—have left no tenable basis for *Kendall* and its progeny.

Third, it is altogether appropriate to overrule a precedent that has become "a positive detriment to coherence and consistency in the law." *Patterson*, 491 U. S., at 173. The inconsistency between the *Kendall* line and *Irwin* is a source of both theoretical incoherence and practical confusion.  For example, 28 U. S. C. §2401(a) contains a time

limit materially identical to the one in §2501. Courts of Appeals have divided on the question whether §2401(a)'s limit is "jurisdictional." Compare *Center for Biological Diversity* v. *Hamilton*, 453 F. 3d 1331, 1334 (CA11 2006) *(per curiam)*, with *Cedars-Sinai Medical Center* v. *Shalala*, 125 F. 3d 765, 770 (CA9 1997). See also *Harris* v. *Federal Aviation Admin.*, 353 F. 3d 1006, 1013, n. 7 (CADC 2004) (recognizing that *Irwin* may have undermined Circuit precedent holding that §2401(a) is "jurisdictional"). Today's decision hardly assists lower courts endeavoring to answer this question. While holding that the language in §2501 is "jurisdictional," the Court also implies that *Irwin* governs the interpretation of all statutes we have not yet construed—including, presumably, the identically worded §2401. See *ante*, at 7.

Moreover, as the Court implicitly concedes, see *ante*, at 8, the strongest reason to adhere to precedent provides no support for the *Kendall-Finn-Soriano* line. "*Stare decisis* has added force when the legislature, in the public sphere, and citizens, in the private realm, have acted in reliance on a previous decision, for in this instance overruling the decision would dislodge settled rights and expectations or require an extensive legislative response." *Hilton* v. *South Carolina Public Railways Comm'n*, 502 U. S. 197, 202 (1991). The Government, however, makes no claim that either private citizens or Congress have relied upon the "jurisdictional" status of §2501. There are thus strong reasons to abandon—and notably slim reasons to adhere to—the anachronistic interpretation of §2501 adopted in *Kendall.*

Several times, in recent Terms, the Court has discarded statutory decisions rendered infirm by what a majority considered to be better informed opinion. See, *e.g., Leegin Creative Leather Products, Inc.* v. *PSKS, Inc.*, 551 U. S. \_\_\_, \_\_\_ (2007) (slip op., at 28) (overruling *Dr. Miles Medical Co.* v. *John D. Park & Sons Co.*, 220 U. S. 373 (1911));

*Bowles* v. *Russell*, 551 U. S. \_\_\_, \_\_\_ (2007) (slip op., at 9) (overruling *Thompson* v. *INS*, 375 U. S. 384 (1964) *(per curiam)*, and *Harris Truck Lines, Inc.* v. *Cherry Meat Packers, Inc.*, 371 U. S. 215 (1962) *(per curiam)*); *Illinois Tool Works Inc.* v. *Independent Ink, Inc.*, 547 U. S. 28, 42–43 (2006) (overruling, *inter alia*, *Morton Salt Co.* v. *G. S. Suppiger Co.*, 314 U. S. 488 (1942)); *Hohn* v. *United States*, 524 U. S. 236, 253 (1998) (overruling *House* v. *Mayo*, 324 U. S. 42 (1945) *(per curiam)*).  In light of these overrulings, the Court's decision to adhere to *Kendall*, *Finn*, and *Soriano*—while offering nothing to justify their reasoning or results—is, to say the least, perplexing.  After today's decision, one will need a crystal ball to predict when this Court will reject, and when it will cling to, its prior decisions interpreting legislative texts.

I would reverse the judgment rendered by the Federal Circuit majority.  In accord with dissenting Judge Newman, I would hold that the Court of Appeals had no warrant to declare the petitioner's action time barred.