TARANTO, Circuit Judge,
concurring.
I agree that we should affirm the Court of Federal Claims’ dismissal of Roca Soli-da’s Tucker Act case under 28 U.S.C. § 1500, based on the construction of that section’s language in United States v. Tohono O’Odham Nation, — U.S. -, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011). I join the court’s opinion. I do so, however, with the recognition that this application of § 1500 may soon present a substantial constitutional question about whether federal statutes have deprived Roca Solida of a judicial forum to secure just compensation for a taking; that avoidance of such constitutional questions can sometimes support adoption of statutory constructions that would otherwise be rejected; that neither Tohono nor other authorities squarely address § 1500’s application when it raises the constitutional question lurking here; but that we need not pursue special-construction possibilities now — not just because the problem is not present at the moment, but because there may be avenues open to addressing the constitutional question if it arises in the dispute between Roca Solida and the government.
To summarize: The combination of three statutes — (1) § 1500 as construed in Tohono; (2) the Tucker Act’s six-year statute of limitations, 28 U.S.C. § 2501, which is jurisdictional and not subject to general equitable tolling; and (3) the Little Tucker Act’s $10,000 cap on just-compensation claims in district courts, 28 U.S.C. § 1346(a)(2) — threatens to deprive Roca Solida of the opportunity to secure complete relief for what (we must assume on the motion to dismiss) might be a taking of its property. That is because the six-year period allowed for bringing a Tucker Act suit in the Court of Federal Claims (which is not limited by dollar amount) may well end before the § 1500 bar on doing so is lifted by completion of the Nevada district-court action. But if that occurs, Roca Solida may have remedies. One possibility, highly problematic but not foreclosed by today’s decision, is invocation of the transfer statute, 28 U.S.C. § 1631, to transfer to the Court of Federal Claims (when the § 1500 bar ends) the takings claim Roca Solida timely filed in the district court, a claim broad enough to encompass Roca Solida’s full claim for just compensation for a permanent or temporary taking. If a full just-compensation remedy is statutorily unavailable, the district court may be entitled to adjudicate the permanent-taking claim and order return of the property if it finds a taking. And if restorative relief is incomplete, as by leaving a temporary taking uncompensated, questions would arise about whether tolling of the statute of limitations might be recognized to avoid unconstitutionality or whether the combination of remedy-de *1358 priving statutes is unconstitutional as applied.
It is hardly implausible that the two-forum water-diversion dispute here will arrive at a point at which those issues will have to be addressed if raised: according to the government, the six-year limitations period ends in August 2016, and neither party has said that the Nevada case is positively likely to end by then. Nevertheless, the troubling potential-loss-of-Fifth-Amendment-rights issues are at present contingent — they may not ripen: the Nevada case may be over by August 2016, and that case may definitively establish the non-existence of a taking that requires just compensation. Perhaps the likelihood that such issues will arise, here and more generally, would permit us to consider, in the present appeal, a constitutional-avoidance exception to § 1500’s otherwise-required application. But I do not think it advisable to pursue that question now, partly because, uncertain and complex as they may be, there are at least some possibilities for Roca Solida to secure partial or complete relief even if the Nevada case is still blocking a suit in the Court of Federal Claims in August 2016. I therefore elaborate on the problems hovering on the horizon and possible remedial solutions to those problems.
A
Roca Solida has proceeded in what appears to be a sensible way, perhaps the only way possible under federal statutes, to try to secure complete judicial relief for the water diversion that it claims was unlawful on several grounds, including several constitutional grounds.
Roca Solida has made clear that its main aim has been to secure restoration of the diverted stream to the path it once took through Roca Solida’s land. In district court, it has sought injunctive and declaratory relief from the government’s diversion of the stream, and among its grounds it has invoked the First Amendment’s Free Exercise Clause and the Fifth Amendment’s Due Process Clause. But as long as the Tucker Act remedy for just compensation is available in the Court of Federal Claims, Roca Solida may not invoke the Fifth Amendment’s Takings Clause to obtain restoration of the water in district court, because the Fifth Amendment, insofar as it applies here, does not bar takings, only takings without just compensation. See Blanchette v. Conn. Gen. Ins. Corps., 419 U.S. 102, 127, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974).[1] And Roca Solida could not bring a claim for water restoration in the Court of Federal Claims, whose Tucker Act jurisdiction, including particularly its takings-claim jurisdiction, is limited to monetary relief as relevant here. See United States v. King, 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); see also Acadia Technology, Inc. v. United States, 458 F.3d 1327, 1331 (Fed.Cir.2006) (just-compensation claim assumes alleged taking itself was not wrongful; challenges alleging wrongfulness of alleged taking must be brought elsewhere).
Roca Solida has also sought just-compensation damages, both in district court and in the Court of Federal Claims. The damages claim in the district court would, at a minimum, address the alleged temporary taking that would come to an end if Roca Solida were to succeed in achieving *1359 its primary, restoration objective; and when filed, it was plausibly valued at no more than $10,000, the limit for district court jurisdiction under the Little Tucker Act. But the claim is written broadly enough to cover a claim of both permanent and temporary taking. At the same time, Roca Solida brought the present Court of Federal Claims takings case under the Tucker Act. That claim would address the request for just compensation for a permanent taking, plausibly valued at more than $10,000, if the non-takings claims for restoration in the district court fail. It also could provide just compensation for a temporary taking if, though the water got restored, the passage of time were to raise the value of the temporary-taking claim to more than $10,000.
The Court of Federal Claims case would never need to be adjudicated if, for example, Roca Solida obtained restoration of the water in the district court and sought no more than $10,000 in just compensation for any uncured taking. Smith v. Orr, 855 F.2d 1544, 1553 (Fed.Cir.1988). Accordingly, Roca Solida immediately asked the Court of Federal Claims to stay its Tucker Act case. But Roca Solida might not obtain restoration of the water in the district-court case, and even a temporary-taking claim might grow in value to more than $10,000 given that the stream diversion occurred in 2010. Should Roca Solida seek just compensation in excess of $10,000 for either a temporary or permanent taking, the Court of Federal Claims appears to be the exclusive judicial forum for obtaining it, at least if this court’s conclusion in Smith v. Orr, 855 F.2d at 1552, about the loss of initially proper Little Tucker Act jurisdiction when the claim rises in value above $10,000 were applied broadly. See Christopher Vill, L.P. v. United States, 360 F.3d 1319, 1332 (Fed.Cir.2004); but cf. pp. 12-13, infra (noting question about Smith’s scope and soundness).
Under 28 U.S.C. § 2501, “[ejvery claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.” The government contends that the takings claim accrued in August 2010. Oral Argument at 24:30-24:40, Ministerio Roca Solida v. United States, 2014-5058; see John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1357 (Fed.Cir.2006), aff'd, 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008). Under that assumption, the six-year period ends in August 2016. The Nevada case may well extend beyond that date. In that event, applying § 1500 as construed in Tohono would block Roca So-lida’s ability to initiate an action in the Court of Federal Claims until the statute of limitations has run.
There would be no such bar if equitable tolling were available to suspend the running of the clock. But the Supreme Court has recently held that it is not. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 136-39, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008);[2] see FloorPro, Inc. v. United States, 680 F.3d 1377, 1382 (Fed.Cir.2012). As a result, because Roca Soli-da is pursuing its constitutional and other claims for relief in district court — claims that it cannot bring and consolidate in the Court of Federal Claims — the combination of § 1500, § 2501, and § 1346(a)(2), under the governing general standards and considered by themselves, may soon eliminate Roca Solida’s access to a judicial forum for obtaining just compensation for what may be a taking.
*1360 B
A substantial constitutional question would be raised if federal statutes forced a claimant to choose between securing judicial just compensation for a taking of property and pursuing constitutional and other legal claims that challenge, and if successful could reverse, the underlying action alleged to constitute a taking. See Blanchette, 419 U.S. at 148-49, 95 S.Ct. 335 (withdrawing the Tucker Act remedy, without a corresponding guarantee of just compensation, may “raise serious constitutional questions”). Although, as a general matter, it is the sovereign’s prerogative to “prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted,” Beers v. Arkansas, 61 U.S. 527, 20 How. 527, 529, 15 L.Ed. 991 (1858), the Fifth Amendment’s Takings Clause has long been treated as guaranteeing a just-compensation remedy, not just an underlying right. Notably, in First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, the Supreme Court rejected the government’s argument that “the prohibitory nature of the Fifth Amendment ... combined with principles of sovereign immunity, establishes that the Amendment itself is only a limitation on the power of the Government to act, not a remedial provision.” 482 U.S. 304, 316 n. 9, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). The Court explained that, to the contrary, precedent “make[s] clear that it is the Constitution that, dictates the remedy for interference with property rights amounting to a taking.” Id.; see also Richard H. Fallon, Jr. et al., Hart & Wechsler’s the Federal Courts and the Federal System 718-19 (6th ed.2009) (characterizing the Takings Clause as establishing a constitutional remedy).[3]
Other, more general authorities may have a bearing on the constitutional questions that may arise in August 2016. One line of authority concerns congressional deprivation of judicial relief for constitutional violations. The Court has repeatedly noted “the ‘serious constitutional question’ that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.” Elgin v. Dep’t of Treasury, — U.S. -, 132 S.Ct. 2126, 2132, 183 L.Ed.2d 1 (2012); Webster v. Doe, 486 U.S. 592, 602-03, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). Another line of authority concerns the imper-missibility of imposing “unconstitutional conditions” in various circumstances, including those involving alleged takings. The Court has explained that it has held “in a variety of contexts that ‘the government may not deny a benefit to a person because he exercises a constitutional right.’ ” Koontz v. St. Johns River Water Mgmt. Disk, — U.S. -, 133 S.Ct. 2586, 2594, 186 L.Ed.2d 697 (2013). Cf. Simmons v. United States, 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (in particular criminal-case context, deeming it “intolerable that one constitutional right should have to be surrendered in order to assert another”).
I do not address how those and perhaps other authorities would apply if federal statutes were to preclude Roca Solida from obtaining a judicial award of just compensation for a taking because it pursued its constitutional and other legal claims in district court. Rulings in this area have often been tightly bound to case-specific facts, as *1361 established by a fully developed factual record. In particular, I do not address whether it is relevant that Roca Solida first sued in August 2012, two years after the August 2010 completion of the water-diversion project. I also put aside, for purposes of this opinion, the possibility that § 1500 would not have applied if Roca Solida had filed in the Court of Federal Claims before, rather than two days after, filing in district court.[4] I conclude only that serious questions are raised by the apparent combined effect of § 1500, § 2501, and § 1346(a)(2), under their general governing interpretations, on what may well be Roca Solida’s situation a year and a half from now.
The substantiality of the constitutional questions raises a natural follow-on question: whether § 1500 should be given a distinctively narrow application when necessary to avoid those questions. Statutes have sometimes been given constructions as applied to particular situations to avoid substantial constitutional problems, even when other considerations, including textual considerations, pointed the other way. See, e.g., Bond v. United States, — U.S. -, 134 S.Ct. 2077, 2088-90, 189 L.Ed.2d 1 (2014); Jinks v. Richland County, 538 U.S. 456, 123 S.Ct. 1667, 155 L.Ed.2d 631 (2003); Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002); NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 500, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979).
C
Neither the Supreme Court nor this court has addressed whether § 1500 should be applied in such circumstances. Tohono did not involve a takings claim (it involved a breach-of-trust claim) under the Tucker Act. Keene Corp. v. United States, 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993), did involve a takings claim among the Tucker Act claims at issue, but the court did not have before it or address a contention that applying § 1500 to bar the Tucker Act suit, in combination with the statute of limitations, § 2501, might force the claimant to choose between giving up a just-compensation claim and giving up other legal claims, including other constitutional claims. Indeed, the government in Keene, addressing the possibility that a Tucker Act claim might be untimely when the § 1500 bar ended, represented that “equitable tolling of the statute of limitations may be available” for a plaintiff with such a claim. Brief for the United States at 40-41, Keene, 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (No. 92-166), 1993 WL 290106, at *40-41. Only fifteen years later did the Court hold, at the government’s urging, that § 2501 is jurisdictional and thus not susceptible to equitable tolling. John R. Sand, 552 U.S. at 139, 128 S.Ct. 750.
Other Supreme Court decisions likewise do not address whether § 1500 might properly be read not to bar a Tucker Act suit when a contrary holding, in combina-
*1362 tion with the statute of limitations, would force the claimant to choose between giving up a just-compensation claim and giving up other legal claims, including other constitutional claims. See Matson Nav. Co. v. United States, 284 U.S. 352, 354, 52 S.Ct. 162, 76 L.Ed. 336 (1932) (Court of Claims action founded upon breach of contract); Corona Coal Co. v. United States, 263 U.S. 537, 539, 44 S.Ct. 156, 68 L.Ed. 431 (1924) (Court of Claims action founded upon act of Congress); In re Skinner & Eddy Corp., 265 U.S. 86, 91, 44 S.Ct. 446, 68 L.Ed. 912 (1924) (Court of Claims action founded upon breach of contract). Nor, evidently, is the issue decided in rulings by this court and its predecessors.
D
The foregoing constitutional questions, and their potential consequences for construing § 1500, do not have to be faced at present. The scenario making the constitutional questions seemingly serious ones may not arise. . And as a general matter, a “ ‘longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.’ ” Camreta v. Greene, — U.S. -, 131 S.Ct. 2020, 2031, 179 L.Ed.2d 1118 (2011) (quoting Lyng v. Northwest Indian Cemetery Protective Assn., 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988)). Although application of that principle sometimes requires a judgment call about the degree of contingency involved, the appropriateness of applying it here is reinforced by the conclusion that, even with the dismissal under § 1500, Roca Solida has several possible (not to say certain or clear) paths to seeking partial or complete judicial relief.
One possible path to explore can be seen by broadening the statutory focus, beyond § 1500, § 2501, and § 1346(a)(2), to include the transfer statute, § 1631 — but § 1500 might well block that path. Putting § 1500 to one side for a moment, it may be that § 1631 would allow the transfer to the Court of Federal Claims of the takings claim filed in district court in 2012, once that claim rose in value to more than the $10,000 allowed under the Little Tucker Act; and if so, the resulting Court of Federal Claims action would be treated, for statute-of-limitations purposes, as if it had been filed in 2012. 28 U.S.C. § 1631 (“[wjhenever” a court “finds that there is a want of jurisdiction,” it “shall, if it is in the interest of justice, transfer such action” to a court “in which [it] could have been brought at the time it was filed,” where it “shall proceed as if it had been filed in ... [the transferee court] on the date upon which it was actually filed in ... [the transferor court]”). Although transfers are not obligatory, avoidance of statute-of-limitations problems (which a re-filing after a dismissal might present) is “[a] compelling reason for transfer,” Texas Peanut Farmers v. United States, 409 F.3d 1370, 1374 (Fed.Cir.2005), as is the interest in providing the constitutionally guaranteed judicial forum for a claim for just compensation for a taking.
But § 1500 creates a problem for the transfer possibility. We have held that, in the transfer situation, (a) § 1631 requires asking whether § 1500 would have blocked the transferred claim if it had been filed in the Court of Federal Claims at the same time the un-transferred claims were filed in the district court and (b) § 1500 applies to simultaneously filed claims. See United States v. County of Cook, 170 F.3d 1084, 1090-91 (Fed.Cir.1999); see also Griffin v. United States, 590 F.3d 1291, 1293 (Fed.Cir.2009); Harbuck v. United States, 378 F.3d 1324, 1328 (Fed.Cir.2004). Under that approach, a transfer of the takings claim here, even after termination of the rest of the Nevada action, would seem to raise this question: would § 1500 have barred the filing of the takings claim in the Court of Federal Claims in 2012 simulta *1363 neously with the filing in the Nevada district court of all the claims currently in the Nevada case except the takings claim? That is not the question presented to us today, but the Tohono standard appears to be a significant obstacle to Roca Solida’s obtaining a favorable answer.[5]
Another possible path is through the district court’s adjudication of the full takings claim, regardless of amount — but this path itself contains an apparent obstacle, albeit one of uncertain breadth and solidity. As to the possibility: Longstanding precedent holds that, in general, satisfaction of statutory jurisdictional prerequisites is to be “tested by the facts as they existed when the action is brought.” Smith v. Sperling, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957); see Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 570, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004) (the “time-of-filing rule is hornbook law”); Keene, 508 U.S. at 209, 113 S.Ct. 2035. Under that principle, it may be that Roca Solida’s takings claim in the district court, proper when filed because plausibly then valued at no more than $10,000, can still be adjudicated in district court and support an award of more than $10,000 if warranted by post-filing events.
An obstacle to that conclusion, however, is this court’s decision in Smith v. Orr, which concluded, in the context of an employee’s claim for backpay, that a district court would lose Little Tucker Act jurisdiction once the amount claimed “accrued to greater than $10,000.” 855 F.2d at 1553. Perhaps Smith 'v. Orr should be limited to barring claims, such as backpay claims based on fixed salary payments, where the non-contingent facts alleged make it effectively certain from the outset that the amount at issue will exceed $10,000. Cf. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (Regarding one jurisdictional minimum, “the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.”). Smith v. Orr itself cited only backpay cases in reaching its conclusion, 855 F.2d at 1553 nn. 42-45, 47, and we have not applied Orr outside those circumstances. See Simanonok v. Simanonok, 918 F.2d 947, 950-51 (Fed.Cir.1990). Moreover, a leading scholar, discussing Smith v. Orr, has stated that “the proposition that a court may take and then lose trial jurisdiction due to the mere passage of time may be questioned in light of’ Keene and Grupo Dataflux. Gregory C. Sisk, Litigation With The Federal Government 238 (4th ed.2006).
Alternatively, or in addition, perhaps a special constitutional-avoidance tolling of the § 2501 statute of limitations is justified, despite the general absence of equitable tolling. There may be an argument for such tolling on a ground that borrows from the essential principles stated in decisions allowing injunctive relief if the Tucker Act remedy has been withdrawn: “it cannot be doubted that the [Tucker Act] remedy to obtain compensation from the Government is as comprehensive as the requirement of the Constitution” and “the true issue is whether there is sufficient proof that Congress intended to prevent such recourse.” Blanchette, 419 U.S. at 127, 126, 95 S.Ct. 335 (internal quotation marks omitted; emphases as in Blanchette). It is open to serious question whether Congress intended to prevent just-compensation relief for *1364 a taking through the combination of § 1500, § 2501, and § 1346(a)(2). If that combination precludes such relief, even when also considering the transfer statute, it might be that the combination should be held unconstitutional as applied, allowing suit for more than $10,000 either in district court or in the Court of Federal Claims when the § 1500 bar ends.
Aside from the possibility of an as-applied constitutional invalidation, if Roca Solida eventually lacks statutory means of obtaining just compensation in court, it may have a forward-looking judicial remedy should it prove that its property was taken. Notably, it may be that the district court can entertain a takings claim to restore the diverted water if the just-compensation remedy is not available. The unavailability of a just-compensation remedy generally allows otherwise-authorized litigation to obtain forward-looking curative relief against an alleged taking. See Horne v. Dep’t of Agric., — U.S. -, 133 S.Ct. 2053, 2063, 186 L.Ed.2d 69 (2013); Eastern Enterprises v. Apfel, 524 U.S. 498, 521-22, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998) (plurality opinion) (where monetary relief against the government is not “an available remedy,” equitable relief for a taking is “within the district courts’ power”); Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 71 n. 15, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) (affirming the district court’s subject-matter jurisdiction under 28 U.S.C. § 1331(a) to entertain a request for a declaratory judgment that, because the Price-Anderson Act “does not provide advance assurance of adequate compensation in the event of a taking, it is unconstitutional”). See also supra p. 7 n. 3.[6] The district court may consider whether such restoration relief is available under those authorities if Roca Solida can no longer maintain a Tucker Act case in August 2016.
The important and deeply rooted interest in the effectiveness of a constitutional guarantee — here, of a just-compensation remedy for a taking — would be well served if the answers to the how-to-secure-relief questions turned out to be clear should they have to be faced. Unfortunately, it is easy to imagine that the costs, uncertainties, and delays of litigating over forum, procedure, and remedies will be substantial — burdens addressed, though probably not fully lifted, by the availability of interest as a part of a just-compensation award (see Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 10-11, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984)) and the availability of attorney’s fees (see 42 U.S.C. § 4654(c); Bywaters v. United States, 670 F.3d 1221 (Fed.Cir.2012)). Complexity, lack of clarity, splitting of jurisdiction, and § 1500’s rigid rule are features of the current legal landscape at issue here, and the practical effect of those features may easily be to cause loss or abandonment of meritorious constitutional claims. But because there is some possibility that Roca Solida will have *1365 remedies available if needed, I conclude that we should apply § 1500 as construed in Tohono rather than grapple more definitively with the constitutional questions that are not yet certain to arise in this dispute.

. Roca Solida has not argued in the .Nevada case that the water diversion could be reversed by injunction on the Takings Clause ground that it was not for a "public use.” Cf. Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 543, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005) (“[I]f a government action is found to be impermissible — for instance because it fails to meet the ‘public use' requirement or is so arbitrary as to violate due process — that is the end of the inquiry. No amount of compensation can authorize such action.”).

. John R. Sand involved a takings claim, but there was no discussion in the Court’s opinion of any contention that the plaintiff faced a statutory impediment to presenting its takings claim within the six-year period.

. In a related vein is the longstanding exception for unconstitutional takings to the general rule that a statutory waiver of sovereign immunity is required to permit an official-capacity suit against a federal officer to restore property to its rightful owner. Malone v. Bowdoin, 369 U.S. 643, 647-48, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 690, 696-97, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); United States v. Lee, 106 U.S. 196, 221-23, 1 S.Ct. 240, 27 L.Ed. 171 (1882).

. I put that aside because the government can hardly contend that Roca Solida could easily have avoided § 1500 difficulties by reversing the order of filing, although Tecon Eng’rs, Inc. v. United States, 170 Ct.Cl. 389, 343 F.2d 943 (1965), supports such a contention. See Brandt v. United States, 710 F.3d 1369, 1379 n. 7 (Fed.Cir.2012) (Tecon "remains the law of this circuit”; holding that a case was not "pending” during the time between the district court’s judgment and the filing of a notice of appeal). The government has argued that Tecon's order-of-filing rule is no longer good law, invoking Tohono, 131 S.Ct. at 1729-30, and UNR Indus., Inc. v. United States, 962 F.2d 1013, 1023 (Fed.Cir.1992) (en banc). Brief for the United States at 33-36, Brandt v. United States, 2012 WL 1943736 (Fed.Cir.2012); United States’ Combined Petition for Panel and En Banc Rehearing, at 9-14, Brandt, 710 F.3d 1369 (Jun. 10, 2013) (No. 12-5050), denied, Aug. 19, 2013; see Brandt, 710 F.3d at 1380-82 (Prost, J., concurring) (Tecon should be overruled).

. Pursuit of a transfer might also raise other issues, such as how to preserve the takings claim's transferability — perhaps severance and a stay of the takings claim in district court, see Fed.R.Civ.P. 21 — until the rest of the Nevada action is no longer pending.

. Apart from the Malone/Larson/Lee authorization of injunctive relief, the Administrative Procedure Act waives sovereign immunity for challenges to federal agency action by certain persons "seeking relief other than money damages,” 5 U.S.C. § 702, and generally authorizes district courts to "set aside agency action ... found to be ... contrary to a constitutional right,” § 706, when the challenged action is "final agency action for which there is no other adequate remedy in a court,” § 704. See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, - U.S. -, 132 S.Ct. 2199, 2204, 183 L.Ed.2d 211 (2012); Bennett v. Spear, 520 U.S. 154, 175, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). The preclusion, of an adequate Tucker Act damages remedy might satisfy the § 704 precondition. The government has not suggested that its position in this two-forum dispute is that the employee who executed the diversion project acted beyond her statutory authority.