**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALOE VERA OF AMERICA, INC., a
Texas corporation; REX G.
MAUGHAN, husband; RUTH G.
MAUGHAN, wife; MAUGHAN
HOLDINGS INC., an Arizona
corporation,
            *Plaintiffs-Appellants,*

            and

GENE YAMAGATA; YAMAGATA
HOLDINGS, INC.,
                    *Plaintiffs,*

BUREAU OF NATIONAL AFFAIRS, INC.,
                    *Intervenor,*

            v.

UNITED STATES OF AMERICA,
            *Defendant-Appellee,*

            v.

KIICHIRO HARANO, JUNICHI
HAYAKAWA; YOSHINORI HORIKAWA;
THE YOMIURI SHIMBUN; HITOSHI
UCHIYAMA; TSUENEO WATANABE;
TOYOHIKO YAMANOUCHI (Non-party
Witness),
                    *Movant.*

No. 07-15577

D.C. No.
CV-99-01794-JAT

12203

ALOE ALOE VERA OF AMERICA, INC.,
a Texas corporation; REX G.
MAUGHAN, husband; RUTH G.
MAUGHAN, wife; MAUGHAN
HOLDINGS INC., an Arizona
corporation,

*Plaintiffs,*

BUREAU OF NATIONAL AFFAIRS, INC.,

*Intervenor,*

and

GENE YAMAGATA; YAMAGATA
HOLDINGS, INC.,

*Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA,

*Defendant-Appellee,*

v.

KIICHIRO HARANO, JUNICHI
HAYAKAWA; YOSHINORI HORIKAWA;
THE YOMIURI SHIMBUN; HITOSHI
UCHIYAMA; TSUENEO WATANABE;
TOYOHIKO YAMANOUCHI (Non-party
Witness),

*Movant.*

No. 07-15579

D.C. No.
CV-99-01794-JAT

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeals from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted
October 24, 2008—San Francisco, California

Filed July 30, 2009
Amended September 2, 2009

Before: J. Clifford Wallace, Sidney R. Thomas and
Susan P. Graber, Circuit Judges.

Opinion by Judge Wallace

**COUNSEL**

Terrence D. Woolston and Tim A. Tarter, Woolston & Tarter, P.C., Phoenix, Arizona, and Edwin B. Wainscott and James A. Ryan, Quarles & Brady, L.L.P., Phoenix, Arizona, for plaintiffs-appellants Aloe Vera of America, Inc., Rex G. Maughan, Ruth G. Maughan and Maughan Holdings, Inc.

Merwin D. Grant and Kenneth B. Vaughn, Grant & Vaughn, P.C., Phoenix, Arizona, for plaintiffs-appellants Gene Yamagata and Yamagata Holdings, Inc.

Richard T. Morrison, Acting Assistant Attorney General, Jonathan S. Cohen and Karen G. Gregory, Tax Division, Department of Justice, Washington, D.C., for the defendant-appellee.

---

**ORDER**

The opinion filed on July 30, 2009 is amended as follows:

1.  Slip Opinion page 9948-49, Section I — After the sentence reading, "After the news of the simultaneous examination leaked, Aloe Vera lodged a complaint with the United States Competent Authority, accusing the NTA of intentionally disclosing tax information to the public," insert the following additional sentence and citation:

    Income tax treaties generally permit taxpayers to request assistance from a designated "competent authority" if they believe that any party to the treaty has taken action that has resulted or will result in taxation that is contrary to the provisions of the treaty. Rev. Proc. 2006-49, 2006-2 C.B. 1035.

## OPINION

WALLACE, Senior Circuit Judge:

Aloe Vera of America, Inc., Rex Maughan, Ruth Maughan, Maughan Holdings, Inc., Gene Yamagata, and Yamagata Holdings, Inc. (collectively, Aloe Vera), appeal from the district court's summary judgment against them on their claims under 26 U.S.C. § 7431(a)(1). We must determine whether the statute of limitations in 26 U.S.C. § 7431(d) is jurisdictional. We vacate and remand.

## I.

Rex Maughan (Maughan) is the owner of Aloe Vera of America, Inc. (AVA), a United States corporation that processes and sells aloe vera products in the United States, Japan, and other countries. Maughan and Yamagata, indirectly through their respective holding companies, are co-owners of Forever Living Products Japan, Inc. (FLPJ), a Japanese corporation that purchases products from AVA.

In 1991 and 1992, AVA paid commissions and royalty-based income received from FLPJ to Maughan and Yamagata. The Internal Revenue Service (IRS) was concerned about whether this income was properly reported in the United States. Consequently, on April 26, 1996, the IRS sent a letter to the Japanese National Taxing Authority (NTA), proposing that the authorities simultaneously examine the tax reports of AVA, Maughan, Yamagata, and FLPJ. The letter estimated that for tax years 1991 and 1992, Maughan and Yamagata failed to report commission and royalty income from AVA product sales to FLPJ, totaling more than $32 million. In August 1996, the IRS and NTA held a meeting to discuss the examination. During this time, Aloe Vera apparently did not know about the examination and did not know that the NTA and IRS were disclosing information to each other.

On August 15, 1996, the IRS notified Maughan and AVA of the simultaneous examination. This appears to be the first notification that Maughan and AVA had of the investigation. At the end of 1996, the NTA made an audit proposal to FLPJ, which FLPJ rejected, and in early 1997, the NTA sent correction notices to FLPJ regarding its tax liabilities. In February 1997, the IRS sent letters to Maughan and AVA to propose tax adjustments. Shortly thereafter, on March 4, 1997, Maughan and AVA took the offensive and filed requests pursuant to the Freedom of Information Act for copies of documents exchanged by the NTA and the IRS during the simultaneous examination.

On October 9, 1997, Japanese news sources reported that Aloe Vera had failed to report income of 7.7 million yen (at the time, approximately $60 million) to tax authorities. The Japanese reporters attributed this information to unidentified "tax sources" and the IRS. After the news of the simultaneous examination leaked, Aloe Vera lodged a complaint with the United States Competent Authority, accusing the NTA of intentionally disclosing tax information to the public. Income tax treaties generally permit taxpayers to request assistance from a designated "competent authority" if they believe that any party to the treaty has taken action that has resulted or will result in taxation that is contrary to the provisions of the treaty. Rev. Proc. 2006-49, 2006-2 C.B. 1035. After an investigation, the Competent Authority found no proof that the NTA had leaked the information.

On October 6, 1999, Aloe Vera filed a complaint against the United States government in the district court under 26 U.S.C. § 7431(a), containing two counts. In Count I, Aloe Vera alleged that the IRS had disclosed false information to the NTA in violation of 26 U.S.C. § 6103(a). In Count II, Aloe Vera alleged that the IRS had further violated section 6103 by disclosing certain tax information to the NTA even though the IRS knew or should have known that the NTA would leak the information.

The government moved to dismiss the complaint on several grounds, including that the complaint was barred on jurisdictional grounds by the two-year statute of limitations contained in section 7431(d). The district court held that the statute of limitations in that section was not jurisdictional, but nevertheless dismissed the complaint (with leave to amend) because Aloe Vera had failed to plead a date of discovery of the allegedly unauthorized disclosures within the two-year limitations period. After Aloe Vera filed an amended complaint, the court refused to dismiss the action as untimely because the amended complaint included an allegation that Aloe Vera did not discover the nature of the IRS disclosures to the NTA until August 1998, when Aloe Vera received disclosures under the Freedom of Information Act pursuant to a court order.

Subsequently, the government moved for summary judgment on both counts, and Aloe Vera moved for summary judgment on Count I. The district court granted the government's motion on both counts. As to Count I, the district court held that the government's disclosure of allegedly false information to the NTA did not violate section 6103(a). As to Count II, the district court held that Aloe Vera had not raised a genuine issue of material fact as to whether the IRS knew or should have known, prior to October 1997, that the NTA routinely leaked information received under the treaty. Aloe Vera timely appealed, challenging the district court's summary judgment on both counts.

We review *de novo* both the district court's summary judgment and its interpretation of the Internal Revenue Code. *Siddiqui v. United States*, 359 F.3d 1200, 1202 n.2 (9th Cir. 2004). We review *de novo* the district court's denial of a motion to dismiss. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 883 (9th Cir. 2005) (en banc).

## II.

**[1]** Aloe Vera sued the government under 26 U.S.C. § 7431(a)(1), which allows a taxpayer to bring a civil action

for damages against the government when an officer or employee of the government "knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer" in violation of section 6103. Section 7431(d) provides that any claim for wrongful disclosure of tax return information "may be brought . . . at any time within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure."

The Supreme Court recently explained that when the United States is named as a defendant in an action, a statute of limitations, such as the one in section 7431(d), falls into one of two categories. *See John R. Sand & Gravel Co. v. United States*, 128 S. Ct. 750, 753 (2008). The first category includes those statutes of limitations that "seek primarily to protect defendants against stale or unduly delayed claims." *Id.* These statutes of limitations are subject to forfeiture and waiver, and the statutes may be equitably tolled. *Id.*

**[2]** The second category includes those statutes of limitations that "seek not so much to protect a defendant's case-specific interest in timeliness as to achieve a broader system-related goal, such as . . . limiting the scope of a governmental waiver of sovereign immunity." *Id.* (citations and internal quotation marks omitted). These latter statutes of limitations are "more absolute" and are not subject to waiver or equitable tolling, and the time limits imposed are considered jurisdictional. *Id.*; *see also United States v. Dalm*, 494 U.S. 596, 608 (1990) ("[T]he United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit" (internal quotation marks omitted)).

Because jurisdictional questions must be decided prior to reaching the merits of a case, we must first determine whether the limitations period provided in section 7431(d) falls into this latter category of jurisdictional statutes of limitations. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S.

422, 430-31 (2007); *see also Hansen v. Dep't of Treasury*, 528 F.3d 597, 600 (9th Cir. 2007) (holding that an appellate court "has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review" (internal quotation marks omitted)). Reviewing this issue *de novo*, *United States v. Park Place Assocs., Ltd*., 563 F.3d 907, 918 (9th Cir. 2009), we conclude that it does.

**[3]** Our first reason for this conclusion is that the structure of section 7431 indicates that Congress intended the limitation period to restrict the scope of the government's waiver of sovereign immunity. Section 7431(a) begins with the statement that "[i]n general," taxpayers may bring a civil action for damages against the government for unlawful inspection or disclosure of tax returns or tax return information. The remainder of section 7431, however, limits the scope of that general waiver of immunity. Section 7431(b) provides a categorical exception to the waiver—the government shall not be liable for inspection or disclosure "(1) which results from a good faith, but erroneous, interpretation of section 6103, or (2) which is requested by the taxpayer." Finally, the section at issue here, section 7431(d), limits the time period in which the taxpayer may bring an action. Section 7431 as a whole therefore operates to "limit[ ] the scope of a governmental waiver of sovereign immunity," thus strongly indicating that the limitations period provided is jurisdictional. *See John R. Sand*, 128 S. Ct. at 753.

**[4]** In addition, the language of section 7431(d) shows that Congress intended the statute of limitations to be absolute. The inclusion of the phrase "[n]otwithstanding any other provision of law" at the beginning of the subsection requires that an action may be brought only within the two-year period. No provision of law may abrogate that prescription, including any provision that may provide for equitable tolling or waiver. By including this phrase, Congress clearly signaled that the statute of limitations is absolute.

Nevertheless, Aloe Vera argues that our decision in *Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765 (9th Cir. 1997) compels a different result. To the extent that *Cedars-Sinai* is still valid after *John R. Sand*, *see Marley v. United States*, 567 F.3d 1030, 1036 n.3 (9th Cir. 2009), the holding in *Cedars-Sinai* does not dictate the jurisdictional nature of section 7431(d). In *Cedars-Sinai*, we held that the statute of limitations in 28 U.S.C. § 2401(a) was not jurisdictional. 125 F.3d at 770. We followed *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96 (1990), the Supreme Court case which established that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." As in *Irwin*, we stated that "Congress can create a strictly jurisdictional limitations period if it wishes." *Cedars-Sinai*, 125 F.3d at 770; *see Irwin*, 498 U.S. at 96. In *John R. Sands*, the Court reiterated that "statutory language, for example, could rebut the presumption [of equitable tolling] by demonstrating Congress' intent to the contrary." 128 S. Ct. at 756. As discussed above, the language and structure of the statute indicate that Congress intended to create a jurisdictional limitations period.

**[5]** For these reasons, we conclude, as the Fifth Circuit has in *Gandy v. United States*, 234 F.3d 281, 283 (5th Cir. 2000), that section 7431(d) is jurisdictional. Therefore, we cannot rule on the merits of the case unless the action was timely filed.

## III.

**[6]** We next turn to the question of whether Aloe Vera timely filed its action. Section 7431(d) provides that an action must be brought within two years of the "date of discovery by the plaintiff of the unauthorized inspection or disclosure." 26 U.S.C. § 7431(d). Although the statute could be clearer, we hold that the statute begins to run on the date on which a plaintiff discovers that the allegedly unauthorized inspection

or disclosure has taken place, regardless of whether the plaintiff believed at that time that the inspection or disclosure was authorized. We conclude that "unauthorized" merely modifies "inspection or disclosure." So construed, an action pursuant to section 7431(d) must be filed within two years of the date of discovery of the supposedly improper disclosure, not the date when the plaintiff realizes that a disclosure was unauthorized. *Cf. United States v. Kubrick*, 444 U.S. 111, 123 (1979) (holding that the date an action accrues under the Federal Tort Claims Act is the date when the plaintiff becomes aware of his injury, not the date when the plaintiff discovers that the alleged injury may have resulted from negligence, or the date when a plaintiff recognizes the legal claim).

In this case, the district court ruled that the complaint was timely filed based on allegations in the amended complaint that Aloe Vera "did not discover the unauthorized disclosures by the IRS until August 7, 1998 . . . as a result of a disclosure order . . . in a Freedom of Information Act suit." The court then held that the complaint, which was filed on October 6, 1999, had been timely filed.

The district court did not make findings of fact as to whether Aloe Vera knew, more than two years before it filed the complaint, that the IRS had disclosed information to the NTA. Nor did it make findings of fact as to when Aloe Vera discovered the specific disclosures it now claims were false. Rather, the district court relied exclusively on the amended complaint's allegation that Aloe Vera did not discover that the disclosures by the IRS were unauthorized until August 1998.

**[7]** But the determination of jurisdiction requires more. As described above, the proper date from which to measure the timeliness of the complaint under section 7431 is the date when Aloe Vera discovered the respective disclosures, not the date when Aloe Vera discovered that the disclosures were unauthorized. The pleadings alone are inadequate to make this determination. We therefore vacate the district court's sum-

mary judgment and remand the case to the district court so that it can determine in the first instance whether there is sufficient evidence to establish subject matter jurisdiction pursuant to section 7431(d). *See Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1558-59 (9th Cir. 1987) (holding that where a motion to dismiss " 'challenges the actual existence of subject matter jurisdiction, . . . the pleader must establish jurisdiction with evidence from other sources [than the allegations in the complaint], such as affidavits or depositions' "), quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1363, at 653-54 (1969).

## IV.

On remand, the district court shall make findings of fact regarding the dates on which Aloe Vera discovered the respective disclosures underlying each of Aloe Vera's claims. With respect to Count I, the district court shall make findings of fact regarding the dates on which Aloe Vera discovered each allegedly false disclosure. The court shall have jurisdiction over only those claims related to disclosures, if any, that were discovered within the two-year statutory period. With respect to Count II, the district court shall make findings of fact regarding the dates on which Aloe Vera discovered that the IRS had disclosed information to the NTA. If, after making these factual findings, the district court holds, and we agree, that there is subject matter jurisdiction in this case, we will consider the merits of the appeal from the summary judgment. This panel will retain the appeal if the case returns to this court.

**VACATED AND REMANDED**.