# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALOE VERA OF AMERICA, INC., a Texas corporation; REX G. MAUGHAN, husband; RUTH G. MAUGHAN, wife; MAUGHAN HOLDINGS, INC., an Arizona corporation; GENE YAMAGATA; YAMAGATA HOLDINGS, INC., *Plaintiffs-Appellants*, | No. 10-17136 D.C. No. 2:99-cv-01794-JAT |
| and | |
| BUREAU OF NATIONAL AFFAIRS, INC. and TAX MANAGEMENT, INC., *Intervenors*, | OPINION |
| v. | |
| UNITED STATES OF AMERICA, *Defendant-Appellee*. | |

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted
October 24, 2011—San Francisco, California

Filed November 15, 2012

Before: J. Clifford Wallace, Sidney R. Thomas,
and Susan P. Graber, Circuit Judges.

Opinion by Judge Thomas;
Partial Concurrence and Partial Dissent by Judge Wallace

**SUMMARY**[*]

The panel affirmed in part and reversed in part the district court's summary judgment in favor of the United States in an action claiming that the United States improperly disclosed tax information to the Japanese National Tax Administration (NTA) during the course of a joint investigation.

In a prior appeal of this case, the panel concluded that the two-year statute of limitations in 26 U.S.C. § 7431(d) is jurisdictional and applied to Aloe Vera's claims under § 7431(a), and remanded for the district court to make factual findings and determine whether there is subject matter jurisdiction. The panel also held that the statute of limitations under 26 U.S.C. § 7431(d) for a claim of wrongful disclosure of a tax return is subject to inquiry notice, and begins to run when the plaintiff knows or reasonably should know of the government's allegedly unauthorized disclosures. On remand, the district court ruled that some of Aloe Vera's claims were barred by the statute of limitations and dismissed them.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

In this appeal, the panel held that inquiry notice is not triggered by a single generalized event, but rather by the plaintiff's actual or constructive knowledge of each particular disclosure. The panel concluded that one of Aloe Vera's two claims was barred by the statute of limitations. As to the remaining claim that was not time-barred, the panel remanded because genuine issues of material fact (regarding whether the government knowingly relayed false information to the NTA) precluded summary judgment. The panel held that extending immunity to the government under the good-faith exception of § 7431(b) would eviscerate 26 U.S.C. § 6103's basic purpose of protecting against malevolent government disclosure of tax return information.

Judge Wallace concurred in the majority's opinion, but dissented as to the remand because the plaintiffs failed to carry their burden of establishing that their claims are not barred by the statute of limitations.

---

**COUNSEL**

Tim A. Tarter, Woolston & Tarter, P.C., Phoenix, Arizona; and Merwin D. Grant, Grant & Vaughn, P.C., Phoenix, Arizona for plaintiffs-appellants.

Karen G. Gregory, Tax Division, Department of Justice, Washington, D.C., for defendant-appellee.

**OPINION**

THOMAS, Circuit Judge:

This appeal presents the question, among others, of what event triggers the running of the statute of limitations for a claim for wrongful disclosure of a tax return pursuant to 26 U.S.C. § 7431(d).  We conclude that the statute of limitations begins to run when the plaintiff knows or reasonably should know of the government's allegedly unauthorized disclosures.  We also conclude, in the circumstances presented by this case, that the statute of limitations did not begin to run when the plaintiffs became aware of a pending general investigation that would involve disclosures, but only later when they knew or should have known of the specific disclosures at issue.  Applying these principles to the facts of this case, we affirm in part and reverse in part.

**I**

Tax returns and tax return information must be kept confidential, unless a statutory exception applies.  26 U.S.C. § 6103.  Section 6103 "was enacted in response to the use of tax return information for political purposes revealed during Watergate." *Rueckert v. IRS*, 775 F.2d 208, 210 (7th Cir. 1985).  To add teeth to this statutory protection for taxpayers, Congress created a civil action against the government for an IRS employee's knowing or negligent unauthorized disclosure of a taxpayer's "return information." 26 U.S.C. § 7431.  The action must be brought within two years after the date the unauthorized disclosure is discovered. § 7431(d).

"Return information" protected by the statute is very broadly defined and includes

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(b)(2). "Taxpayer information obtained or prepared by the IRS . . . is 'return information' regardless of the person with respect to whom it was obtained or prepared." *Mallas v. United States*, 993 F.2d 1111, 1118 (4th Cir. 1993).

In this case, Aloe Vera of America, Inc., Rex G. Maughan, Ruth G. Maughan, Maughan Holdings, Inc., Gene Yamagata, and Yamagata Holdings, Inc. (collectively, "Aloe Vera" or "Taxpayers") claim that the United States improperly disclosed tax information to the Japanese National Tax Administration ("NTA") during the course of a joint investigation.

Under § 6103(k)(4), return information may be disclosed to a foreign government that has a tax treaty with the United States, "but only to the extent provided in, and subject to the terms and conditions of, such convention or bilateral agreement." The United States has a tax treaty with Japan that provides, in essence, that the IRS may lawfully disclose any return information that is pertinent to preventing tax fraud or fiscal evasion. Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Japan, art. 26, ¶ 1, Mar. 8, 1971, 23 U.S.T. 967 ("Tax Treaty").

Taxpayers claim that the IRS improperly provided false tax information to the NTA, subjecting the United States to liability under § 7431. The United States denies the claims. The district court granted summary judgment to the United States.

In the prior appeal in this case following the grant of summary judgment, we focused on the two-year statute of limitations provided in § 7431(d). We concluded that the statute of limitations is jurisdictional and that it applied to the claims Aloe Vera filed under 26 U.S.C. § 7431(a). *Aloe Vera of Am., Inc. v. United States,* 580 F.3d 867, 872-73 (9th Cir. 2009). We vacated the judgment, remanded the case, and directed the district court to make findings of fact and determine whether there is subject matter jurisdiction. *Id.* at 873. We retained jurisdiction over the case and reserved judgment on the merits.

On remand, the district court ruled that some of Aloe Vera's claims were barred by the statute of limitations and dismissed them for lack of subject matter jurisdiction. *Aloe Vera of Am., Inc. v. United States*, 730 F. Supp. 2d 1020,

1035 (D. Ariz. 2010) (order). Aloe Vera now appeals from the district court's dismissal Order.

**II**

The facts of this case are recited in our prior opinion. *See Aloe Vera*, 580 F.3d at 869-70. For ease of reference, we restate them here:

> Rex Maughan (Maughan) is the owner of Aloe Vera of America, Inc. (AVA), a United States corporation that processes and sells aloe vera products in the United States, Japan, and other countries. Maughan and Yamagata, indirectly through their respective holding companies, are co-owners of Forever Living Products Japan, Inc. (FLPJ), a Japanese corporation that purchases products from AVA.
>
> In 1991 and 1992, AVA paid commissions and royalty-based income received from FLPJ to Maughan and Yamagata. The Internal Revenue Service (IRS) was concerned about whether this income was properly reported in the United States. Consequently, on April 26, 1996, the IRS sent a letter to the Japanese National Taxing Authority (NTA), proposing that the authorities simultaneously examine the tax reports of AVA, Maughan, Yamagata, and FLPJ. The letter estimated that for tax years 1991 and 1992, Maughan and Yamagata failed to report commission and royalty income from AVA product sales to FLPJ,

totaling more than $32 million. In August 1996, the IRS and NTA held a meeting to discuss the examination. During this time, Aloe Vera apparently did not know about the examination and did not know that the NTA and IRS were disclosing information to each other.

On August 15, 1996, the IRS notified Maughan and AVA of the simultaneous examination. This appears to be the first notification that Maughan and AVA had of the investigation. At the end of 1996, the NTA made an audit proposal to FLPJ, which FLPJ rejected, and in early 1997, the NTA sent correction notices to FLPJ regarding its tax liabilities. In February 1997, the IRS sent letters to Maughan and AVA to propose tax adjustments. Shortly thereafter, on March 4, 1997, Maughan and AVA took the offensive and filed requests pursuant to the Freedom of Information Act for copies of documents exchanged by the NTA and the IRS during the simultaneous examination.

On October 9, 1997, Japanese news sources reported that Aloe Vera had failed to report income of 7.7 billion yen (at the time, approximately $60 million) to tax authorities. The Japanese reporters attributed this information to unidentified "tax sources" and the IRS. After the news of the simultaneous examination leaked, Aloe Vera lodged a complaint with the United States Competent

Authority, accusing the NTA of intentionally disclosing tax information to the public. Income tax treaties generally permit taxpayers to request assistance from a designated "competent authority" if they believe that any party to the treaty has taken action that has resulted or will result in taxation that is contrary to the provisions of the treaty. Rev. Proc.2006-54, 2006-2 C.B. 1035. After an investigation, the Competent Authority found no proof that the NTA had leaked the information.

On October 6, 1999, Aloe Vera filed a complaint against the United States government in the district court under 26 U.S.C. § 7431(a), containing two counts. In Count I, Aloe Vera alleged that the IRS had disclosed false information to the NTA in violation of 26 U.S.C. § 6103(a). In Count II, Aloe Vera alleged that the IRS had further violated section 6103 by disclosing certain tax information to the NTA even though the IRS knew or should have known that the NTA would leak the information.

The government moved to dismiss the complaint on several grounds, including that the complaint was barred on jurisdictional grounds by the two-year statute of limitations contained in section 7431(d). The district court held that the statute of limitations in that section was not jurisdictional, but nevertheless dismissed the complaint (with

leave to amend) because Aloe Vera had failed to plead a date of discovery of the allegedly unauthorized disclosures within the two-year limitations period. After Aloe Vera filed an amended complaint, the court refused to dismiss the action as untimely because the amended complaint included an allegation that Aloe Vera did not discover the nature of the IRS disclosures to the NTA until August 1998, when Aloe Vera received disclosures under the Freedom of Information Act pursuant to a court order.

Subsequently, the government moved for summary judgment on both counts, and Aloe Vera moved for summary judgment on Count I. The district court granted the government's motion on both counts. As to Count I, the district court held that the government's disclosure of allegedly false information to the NTA did not violate section 6103(a). As to Count II, the district court held that Aloe Vera had not raised a genuine issue of material fact as to whether the IRS knew or should have known, prior to October 1997, that the NTA routinely leaked information received under the treaty. Aloe Vera timely appealed, challenging the district court's summary judgment on both counts.

*Id.*

## III

We first turn to the question that we remanded, namely the application of the statute of limitations. The statute of limitations in 26 U.S.C. § 7431(d) provides that a claim for wrongful disclosure of tax return information "may be brought . . . at any time within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure." In *Aloe Vera I*, we held that this statute of limitations is jurisdictional and that it

> begins to run on the date on which a plaintiff discovers that the allegedly unauthorized inspection or disclosure has taken place, regardless of whether the plaintiff believed at that time that the inspection or disclosure was authorized. We conclude[d] that 'unauthorized' merely modifies 'inspection or disclosure.' So construed, an action pursuant to section 7431(d) must be filed within two years of the date of discovery of the supposedly improper disclosure, not the date when the plaintiff realizes that a disclosure was unauthorized.

580 F.3d at 872.

The question now before us is when the "date of discovery" occurs and whether the statute of limitations begins to run on a single date of discovery for all disclosures.

**A**

The "date of discovery" on which the § 7431(d) statute of limitations begins to run is the date when a plaintiff knows or reasonably should know of an allegedly unauthorized inspection or disclosure. This rule accords with the "general federal rule": that a limitations period begins to run when "'the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009) (quoting *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir. 1998)). We have long applied this general rule in many different statutory contexts. *See e.g.*, *Trotter v. Int'l Longshoremen's & Warehousemen's Union Local, 13*, 704 F.2d 1141, 1143 (9th Cir. 1983) (per curiam) (applying constructive discovery to the Labor-Management Reporting and Disclosure Act of 1959); *Norco Constr., Inc. v. King Cnty.*, 801 F.2d 1143, 1145 (9th Cir. 1986) (applying constructive discovery to claims under § 1983); *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760–61 (9th Cir. 1991) (same); *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 365 (9th Cir. 2005) (applying constructive discovery to RICO claims). We see no reason to deviate from the general federal rule in this case, and thus we apply it to claims governed by § 7431(d)'s statute of limitations.

Additionally, the Supreme Court recently held that the term "discovery," as used in 28 U.S.C. § 1658(b)(1)'s statute of limitations, "encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known." *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1796 (2010). Although *Merck* was a securities fraud case, the Court interpreted the statute against

the background of the so-called "discovery rule" in fraud cases and "the history and precedent surrounding the use of the word 'discovery' in the limitations context generally." *Id.* at 1795.  Here, § 7431(d) also uses the phrase "date of discovery" to describe the two-year statute of limitations period.  Although this is not a securities fraud case, 26 U.S.C. § 7431's text supports applying the discovery rule in this context.

Thus, in this case, Aloe Vera's claims are subject to inquiry notice.  That is, the § 7431(d) statute of limitations began to run when Aloe Vera knew or reasonably should have known of the government's allegedly unauthorized disclosures.

**B**

Although the doctrine of inquiry notice applies to § 7431(d), inquiry notice is not triggered by a single generalized event, but rather by the plaintiff's actual or constructive knowledge of each particular disclosure. Indeed, in our remand order, we used plural designations of "dates" and "disclosures," because each disclosure has its own discovery date for jurisdictional purposes:

> On remand, the district court shall make findings of fact regarding the *dates* on which Aloe Vera discovered the respective *disclosures* underlying *each* of Aloe Vera's claims. With respect to Count I, the district court shall make findings of fact regarding the *dates* on which Aloe Vera discovered *each allegedly false disclosure*. The court shall have jurisdiction over only those claims

> related to disclosures, if any, that were
> discovered within the two-year statutory
> period. With respect to Count II, the district
> court shall make findings of fact regarding the
> *dates* on which Aloe Vera discovered that the
> IRS had disclosed information to the NTA.

*Aloe Vera I*, 580 F.3d at 873 (emphasis added).

This conclusion is apparent from an examination of the statute in context. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 371 (1988). Although § 7431(d) does not specifically address the question, § 7431(c)'s damages provision is instructive. It does not provide damages for general or collective disclosures. Instead, it specifies that a defendant held liable under § 7431(a) may be subject to damages of "$1,000 for *each act* of unauthorized inspection or disclosure." 26 U.S.C. § 7431(c)(1)(A) (emphasis added). It thus would be incongruous for us to interpret § 7431(d) as being limited to a single act, encompassing collective disclosures.

General notice of an audit cannot put someone on inquiry notice of a specific conversation or disclosure that has not yet occurred. Thus, it does not make sense for the statute of limitations to begin to run on a single date for all disclosures if some of the allegedly unauthorized disclosures have not yet been made. For example, in this case, the government argues that the statute of limitations should have started running when the IRS informed Aloe Vera of the IRS/NTA joint investigation in August 1996. But Aloe Vera alleges that the government wrongfully disclosed return information at a meeting in Tokyo that took place in November 1996. *Aloe Vera*, 730 F. Supp. 2d at 1032. Of course, the government's

notice of the joint investigation pre-dates the Tokyo meeting. Thus, if the statute of limitations began to run on the single date that the government proposes, Aloe Vera would not have had the full two-year period to file a claim based on the alleged disclosures made at the Tokyo meeting.

Moreover, the government's reading of the statute of limitations would seriously undermine the statute's protections. A multi-jurisdictional audit may take many years, and the taxpayer may well not learn of unauthorized disclosures until a lengthy audit is completed. If inquiry notice were triggered by audit notice alone, the statute would likely run in most cases before the taxpayer learned of any unauthorized disclosure. There is no indication that Congress intended such an anomalous result, particularly because one of § 6103's main purposes is protection against malevolent government disclosure. *See Rueckert*, 775 F.2d at 210 ("Section 6103 was enacted in response to the use of tax return information for political purposes revealed during Watergate.").

In this case, the government's August 1996 notice of the joint IRS/NTA investigation was not sufficient to put Aloe Vera on inquiry notice of each of the particular items of information the government disclosed. The August 1996 audit notice was general and did not provide the exact information that the IRS had or would disclose to the NTA. In response, Aloe Vera diligently tried to learn the exact information the IRS disclosed to the NTA by filing a Freedom of Information Act (FOIA) request. *See Aloe Vera I*, 580 F.3d at 869. The government initially resisted providing the requested information, but eventually disclosed

it in August 1998.[1]  The government conceded that this was the first time Aloe Vera learned of the specific disclosures at issue in this litigation.

## IV

Applying the foregoing interpretation to the case at hand, we conclude that the district court erred in dismissing some of the Taxpayers' claims for lack of subject matter jurisdiction.

## A

There were two factual claims raised in Count I: (1) the charge that the IRS falsely informed the NTA that Taxpayers had significant unreported income and (2) a false statement made by a United States representative that the commissions had not varied, although the sales price had.  The district court did not hold that the allegedly false unreported income statement claim was barred by the statute of limitations.  It did, however, view the "Commission vs. Price Statement" as being asserted outside the statute of limitations and therefore outside the jurisdiction of the court.

The district court erred in concluding that it lacked jurisdiction over the "Commission vs. Price Statement." *See Aloe Vera*, 730 F. Supp. 2d at 1035.  The district court determined that the Yamagata plaintiffs failed to file their Commission vs. Price False Statement claim on time because they "offer[ed] no evidence of when they first learned of this

---

[1] AVA and Maughan's counsel then later shared these records with Yamagata and Yamagata Holdings, Inc., who did not participate in the FOIA case.

alleged false statement." *Id.* at 1027. However, the AVA and Maughan plaintiffs presented evidence that they first learned of this alleged false statement when they received a response to their FOIA request in August of 1998. *Id.* at 1025. The Aloe Vera and Maughan plaintiffs' counsel then "gave the notes that revealed the statement to counsel for Gene Yamagata and Yamagata Holdings, Inc. after August 1998." *Id.* at 1025-26. Nonetheless, the district court held that this evidence was not sufficient to establish subject matter jurisdiction over this claim because the Yamagata plaintiffs "never claim[ed] that receipt of the notes from the other Plaintffs' counsel 'after' August 1998 [was] the *first* time they learned of the alleged false statement." *Id.* at 1027.

The Yamagata plaintiffs presented evidence sufficient to establish subject matter jurisdiction over the Commission vs. Price False Statement claim. The only place in the record where the "Commission vs. Price Statement" exists is in IRS Manager Sturgis' notes from the August 1996 IRS/NTA meeting. The Aloe Vera and Maughan plaintiffs did not discover those notes until they received the FOIA documents in August 1998. They later shared this information with the Yamagata plaintiffs' counsel, who alleged that this was the first time they learned of the Commission vs. Price False Statement. There is no evidence that the IRS disclosed this information to anyone else before turning over the FOIA documents to the Aloe Vera and Maughan plaintiffs. It logically follows that the Yamagata plaintiffs first discovered this evidence only when the Aloe Vera and Maughan plaintiffs' counsel shared it with the Yamagata plaintiffs' counsel. The district court's hypothetical to the contrary – that the Yamagata plaintiffs may have somehow discovered the "Commission vs. Price Statement" before their counsel learned of it – is not supported by any evidence in the record,

and we must view the factual record in the light most favorable to the Yamagata plaintiffs. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

Furthermore, a taxpayer who knows that the IRS has disclosed his tax return generally has no reason to suspect that the IRS has also fabricated and disclosed a false statement. Thus, until the taxpayer knows or should have known about the disclosure of that specific, false statement, the statute of limitations does not begin to run on a claim of disclosure of false information, because the taxpayer has not discovered the existence of the disclosure. Accordingly, we hold that the Yamagata plaintiffs' Count I Commission v. Price Statement claim is not barred by the statute of limitations because it was first discovered within the two-year filing period, and we have subject matter jurisdiction over this claim.

**B**

The district court did not err in dismissing Aloe Vera's Count II claims for lack of jurisdiction. *See Aloe Vera*, 730 F. Supp. 2d at 1035. Taxpayers' Count II claims rest on the premise that any and all disclosures of return information to the NTA were unauthorized because the IRS should have known that the NTA would not hold that information in confidence. Because the statute of limitations is jurisdictional, Taxpayers bear the burden of establishing subject matter jurisdiction. *Kingman Reef Atoll Invs. L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008). Thus, Taxpayers bear the onus of identifying which disclosures were not known to them until less than two years before they filed suit.

Taxpayers failed to carry that burden. Their complaint does not identify which disclosures were unknown to them as of October 6, 1997. The record indicates that, by that date, Taxpayers should have known that the IRS had disclosed to Japan all, or at least most, of the information contained in their 1991–1995 tax returns. The simultaneous examination notice did not trigger the statute of limitations, because a notice that the government *intends* to disclose documents in the future does not constitute discovery of any *actual* disclosure. But Taxpayers should have known of the disclosure of most of their return information once the investigations had concluded, their tax amounts for those years had been adjusted, and they received a letter noting that "a voluminous amount of information" had been exchanged.

We decline to vacate to allow an amendment of the complaint or an evidentiary hearing. Our review of the record shows that Taxpayers never asked to amend their complaint and that only the government even hinted that an evidentiary hearing might be held. The district court gave the parties the briefing on remand that they requested. *Aloe Vera*, 730 F. Supp. 2d at 1035. Furthermore, Taxpayers could not have been taken by surprise by the district court's holding that constructive notice applies, as this is the general federal rule. It was also mentioned as a possibility in our prior oral argument. While the parties may not have used the term "constructive notice" in their briefs to the district court, Taxpayers were aware that the government argued "that there exists but one critical limitation date which began to run here when Taxpayers first learned that the IRS was making disclosures of any sort to the NTA," a theory that parallels constructive notice. Thus, the district judge did not abuse his discretion by declining to order an additional evidentiary hearing. *Aloe Vera*, 730 F. Supp. 2d at 1035.

## V

Having determined that the district court had jurisdiction over the allegations contained in Count I, we turn to the question whether the district court properly granted summary judgment on those claims.  We conclude that genuine issues of material fact preclude summary judgment on the claims.

## A

The district court properly concluded that Taxpayers had stated a claim for relief under § 7431 for improper unauthorized disclosure of tax return information.  Disclosure of false tax return information can constitute tax return information within the meaning of the statute. *See Mallas*, 993 F.2d at 1118.  Taxpayers allege that the United States disclosed false tax return information to NTA.

As we have also discussed, under § 6103(k)(4), return information may be disclosed to a foreign government that has a tax treaty with the United States, "but only to the extent provided in, and subject to the terms and conditions of, such convention or bilateral agreement." The Tax Treaty provides, in relevant part, that "[t]he competent authorities of the Contracting States shall exchange such information as is *pertinent* to carrying out the provisions of this Convention or preventing fraud or fiscal evasion in relation to the taxes which are the subject of this Convention." Tax Treaty, art. 26, ¶ 1 (emphasis added).  Thus, under the Tax Treaty, the IRS may lawfully disclose any return information "pertinent" to "preventing [tax] fraud or fiscal evasion." The IRS argues that even false information may be "pertinent" and therefore protected under the exception.

As a general matter, treaties of the United States are interpreted liberally to give effect to their purposes. *See United States v. Stuart*, 489 U.S. 353, 368 (1989). Thus, under the Tax Treaty, any information that may reasonably be considered pertinent should be covered under § 6103(k)(4)'s disclosure exemptions.

In this case, the simultaneous tax examination by both countries was pertinent to the Tax Treaty's purpose of avoiding tax evasion, and the investigation of potentially fraudulent commissions was equally pertinent. The question is whether a *knowing* provision of *false* information can be "pertinent" to "preventing fraud or fiscal evasion."

"Pertinent" is defined as "[p]ertaining to the issue at hand; relevant." *Black's Law Dictionary* 1261 (9th ed. 2009). "Relevant" is defined as "[l]ogically connected and tending to prove or disprove a matter in issue; having appreciable probative value—that is, rationally tending to persuade people of the probability or possibility of some alleged fact." *Id.* at 1404. Thus, to be pertinent to fighting tax fraud, information must *tend to prove or persuade* that tax fraud or evasion has actually occurred.

Knowingly false information cannot tend to prove tax fraud. Such information does not lead to useful evidence, and it is certainly not competent evidence in its own right. Thus, information known to be false cannot be subject to protection as "pertinent" information under the Tax Treaty. One of § 6103's main purposes is protection against malevolent government disclosure. *Rueckert*, 775 F.2d at 210. Congress intended § 6103 to limit disclosure of tax information to narrowly defined circumstances. *Tierney v. Schweiker*, 718 F.2d 449, 455 (D.C. Cir. 1983). A definition of

"pertinent" that allows the IRS to knowingly disclose false taxpayer information would eviscerate the statute's purpose. Known falsehoods are not pertinent to tax investigations, and knowing disclosures of such false information, even to a treaty partner, is actionable under § 6103 and § 7431, as the district court properly concluded. The knowing provision of false information can never further the purposes of a tax treaty.

**B**

Although the district court concluded that Taxpayers had stated a claim for relief, it granted summary judgment on Count I. Aloe Vera does not argue that mere negligent disclosure of false information to a tax treaty partner can support liability under § 6103(k)(4). Thus, Aloe Vera may overcome summary judgment only if it can show a dispute of material fact as to whether the government knowingly relayed false information to the NTA.

**1**

The IRS's Simultaneous Examination Proposal suggested that Taxpayers had not reported an estimated \$32 million of income. The government does not contend that this figure was, in any respect, accurate. Rather, the government suggests that this number was a mere estimate, and therefore could not be true or false. Thus, the IRS could not have "knowingly" turned over false information. The district court agreed and rested its summary judgment decision primarily on this argument.

But even an estimate can be objectively false if, for example, the communicator knows it *cannot* be true. *See*

*United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1378 (D.C. Cir. 2000) ("[A] faulty estimate or opinion can qualify as a false statement where the speaker knows facts 'which would *preclude* such an opinion' . . . ." (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 792 (4th Cir. 1999)). "[A]n opinion or estimate carries with it 'an implied assertion, not only that the speaker knows no facts which would preclude such an opinion, but that he does know facts which justify it.'" *Harrison*, 176 F.3d at 792 (quoting W. Page Keeton, et al., Prosser & Keeton on the Law of Torts § 109, at 760 (5th ed. 1984)).  More importantly, the question in this case is not the amount of the estimate, but whether Taxpayers had accurately reported the information.

Here, the government has provided no basis whatsoever for its accusations that Taxpayers had a $32 million liability. There is support in the record for Taxpayers' assertion that the IRS knew that Taxpayers had correctly reported the supposedly unreported $32 million in commissions and royalties.  Thus, there is a genuine issue of material fact as to whether the government knowingly disclosed false information, and summary judgment was not appropriate on this issue.

**2**

The second instance of false disclosure in Count I is that, in a presentation to the NTA, an IRS official stated that commission payments on sales of aloe vera products remained unchanged between 1985 and 1989, while prices fluctuated.  This alleged statement implied that Taxpayers had unreported income.  In support of this claim, Taxpayers offer notes taken during the presentation and an IRS audit

from this period showing that the commissions did, in fact, change.  The notes resemble formal minutes.  In the relevant portion, which is preceded and followed by heavily redacted information, the notes state:

> Rick Smith commented that the U.S. team feels that they are doing other things in other countries because their sales are going up and net income is going down.  Rick also stated that through the years the sales price of the product changed quite a bit.  The commission always stayed the same.

The district court determined that the notes, the audit, and deposition testimony were insufficient, concluding that "the Court is not willing to hold the United States liable for intentional falsehoods based on notes taken by two different attendees of a meeting–attendees who admitted to the weakness of their notes."

Unfortunately, this conclusion was made at summary judgment, not after trial.  In deciding whether to grant summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 255.  Further, at the summary judgment stage, we must draw all reasonable inferences in favor of the non-moving party and, where disputed issues of material fact exist, assume the version of the material facts asserted by the non-moving party to be correct.  *Mattos v. Agarano*, 661 F.3d 433, 439 (9th Cir.

2011) (en banc), *cert. denied*, 132 S. Ct. 2681 (2012), 132 S. Ct. 2682 (2012), 132 S. Ct. 2682 (2012), 132 S. Ct. 2684 (2012). Here, reasonable inferences may be drawn that IRS representatives falsely communicated to Japanese authorities that commissions had not fluctuated with price. Although these assertions have yet to be tested in the crucible of trial, the evidence is sufficient to withstand a motion for summary judgment.

**C**

The government argues that, even if it knowingly made false disclosures, it is immune from liability because it had a good-faith misinterpretation of § 6103(k)(4). We disagree.

Section 7431(b) carves out a good-faith exception to the liability imposed by § 7431(a). It provides that "[n]o liability shall arise . . . with respect to any inspection or disclosure . . . which results from a good faith, but erroneous, interpretation of section 6103." 26 U.S.C. § 7431(b)(1). Whether the government's erroneous interpretation of § 6103 was in good faith turns on whether the government violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *McDonald v. United States*, 102 F.3d 1009, 1011 (9th Cir. 1996) (internal quotation marks omitted). The burden is on the government to plead and prove good faith as an affirmative defense. *Id.* at 1010.

As we have already explained, Congress intended § 6103 to protect against malevolent government disclosure of taxpayers' tax return information. *Rueckert*, 775 F.2d at 210. For § 7431(b) to shield the government from liability at this stage in the litigation, the government must argue that, even

if there is a genuine dispute as to whether it *knowingly* disclosed *false* tax return information to the NTA, it is nevertheless entitled to summary judgment because it made an erroneous interpretation of § 6103(k)(4) by which it believed it was *permitted* to make such a false disclosure. This interpretation of § 6103(k)(4) would clearly eviscerate the basic purpose of § 6103. A knowingly false disclosure could not be made in good faith because it would be contrary to established statutory rights of which a reasonable person would have known. *See McDonald*, 102 F.3d at 1011. Accordingly, the government is not entitled to summary judgment on the basis of the good-faith defense of § 7431(b).

## VI

In sum, we have jurisdiction over Taxpayers' Count I claims, but we do not have jurisdiction over Taxpayers' Count II claims. We therefore reverse the district court's dismissal of the Yamagata plaintiffs' Count I claims for lack of jurisdiction and affirm the district court's dismissal of Taxpayers' Count II claims. Because genuine issues of material fact exist as to the claims asserted in Count I, we reverse the grant of summary judgment on those claims.

The parties shall bear their own costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**

WALLACE, Senior Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's opinion with one exception. It is clear to me that the Yamagata plaintiffs have failed to carry their burden of establishing that their claims are not barred by the statute of limitations.

"When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008) (internal quotation marks omitted). When we remanded this case to the trial court to resolve the statute of limitations question, all plaintiffs alleged that they first learned about the critical statements in August 1998, when the Maughan/AVA plaintiffs' counsel received notes from an IRS meeting. The Maughan/AVA plaintiffs' allegation is supported by an affidavit from their general counsel indicating that they first learned of the statements in question when the notes were received. The only support for the Yamagata plaintiffs' allegation, on the other hand, is the Maughan/AVA plaintiffs' counsel's statement that he gave the notes to the Yamagata plaintiffs' counsel sometime after he received them. Obviously, that allegation does not prove any date on which the Yamagata plaintiffs first learned of the statements in question.

The majority nonetheless concludes that the Yamagata plaintiffs met their burden because (1) there is no evidence in the record that suggests the Yamagata plaintiffs learned about the statements before their attorneys and (2) the evidence should be viewed in the light most favorable to the Yamagata plaintiffs as the nonmoving party.

While both these general premises are correct, they lead nowhere to solve the critical issue before us. A permissible inference cannot replace required supporting information. On the relevant question, the Yamagata plaintiffs have not given us what we need most: an affidavit that supports their individualized awareness date. The majority's avoidance of the required proof cannot constitute a satisfaction of the Yamagata plaintiffs' burden of proving jurisdiction.

Federal jurisdiction is always a critical issue. Without its establishment in a case, we do not have power to act. The Yamagata plaintiffs could easily prove jurisdiction by an affidavit stating the date they gained knowledge. Their failure to do so speaks volumes about whether they could prove jurisdiction. The fact is that they did not and the majority's attempt to make an end run around this critical issue is unfortunate.

As to the Yamagata plaintiffs, they had the burden to prove jurisdiction. Perhaps they could have but did not. They should be dismissed for failure to *prove* jurisdiction.