**Benjamin GAL–OR, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 09–869C.**

United States Court of Federal Claims.

June 25, 2010.

---

Benjamin Gal–Or, Bulacan, the Philippines, pro se.

Jordan Cunningham, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were Jeanne E. Davidson, Director, and Tony West, Assistant Attorney General.

## OPINION

ERIC G. BRUGGINK, Judge.

This is an action brought by Benjamin Gal–Or, an engineer and scientist, who proceeds *pro se*. In substance, he alleges that

he developed certain inventions based on his "physic-electro-thermodynamics" ideas, and that the government took this proprietary information without just compensation, in violation of the Fifth Amendment of the United States Constitution. Pending is defendant's motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") and for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). The motion is fully briefed. Oral argument is deemed unnecessary. For the reasons set out below, the motion is granted in part pursuant to RCFC 12(b)(6), and denied in all other respects. We order Mr. Gal–Or, however, to make a more definite statement with respect to his remaining claims.

## BACKGROUND [1]

Mr. Gal–Or is a former professor of engineering at Johns Hopkins University and the University of Pittsburgh. An Israeli citizen, he holds permanent resident status in the United States and now lives in the Phillippines. From 1967 to 2002, he implemented his "physic-electro-thermodynamics-based ideas to generate five inventions involving Stealth, Tailless, (complete) thrust Vectoring air Systems [STVS], including their integrated central stealth propulsion systems for manned or unmanned air vehicles." Compl. at 4. He alleges "fourteen, incremental, causative transfer acts (disclosures) that have conferred on the defendant said pleader's proprietary information since 1986." Compl. at 5. He alleges that these transfers have resulted in "unjust gains" for the government. *Id.*

According to Mr. Gal–Or, the following fourteen events resulted in the defendant benefitting from his expertise, either directly, or indirectly through the actions of government contractors. Our summary of those allegations follows:

1. In 1986, Mr. Gal–Or and his laboratory applied for an Israeli patent covering his five inventions. After filing the application, the laboratory invited federal officials or employees to examine the laboratory. These persons then invited Mr. Gal–Or to lecture on his ideas at a seminar in Colorado Springs, Colorado. Mr. Gal–Or suspected that Israeli patent law prevented him from disclosing the information directly to the government; he thus apparently declined the invitation and instead sought out government contractors with whom to share the information.

2. Boeing, one of the contractors Mr. Gal–Or sought out, entered into a proprietary information agreement with him in August 1986, for Mr. Gal–Or to produce drawings of unmanned aircraft using the STVS technology. Before he completed full delivery, Boeing adapted information he provided into a bid to participate in the United States Air Force's F–22 fighter jet program.

3. The government invited Mr. Gal–Or to speak about his expertise in jet engines in Dayton, Ohio. Mr. Gal–Or accepted the invitation. He spoke about his expertise and recommended that defendant cancel an existing program and work instead with Mr. Gal–Or's low-cost method for propelling unmanned aerial vehicles. The government then funded Mr. Gal–Or's creation of scale models from 1987 until 1992.

4. In 1991, an United States Air Force flight manager worked under contract in Mr. Gal–Or's laboratory for three months and leaked or destroyed portions of Mr. Gal–Or's work to which the manager did not have contractually-granted access.

5. In 1986, Mr. Gal–Or explained at General Dynamics' facilities how to improve jet propulsion on maneuvers that threaten to stall an aircraft. Using the information, General Dynamics cancelled a stealth aircraft program in which it had previously participated. In 1987, Mr. Gal–Or

**1.** The facts are drawn from the complaint and assumed to be true for purposes of ruling on the motions to dismiss, as defendant has not challenged plaintiff's factual assertions.

provided the same information to a group of about one hundred Lockheed–Martin employees who were working with General Dynamics on a government contract. Mr. Gal–Or repeated the information to two employees of Lockheed and General Dynamics. These two employees visited Mr. Gal–Or's laboratory occasionally until 1997.

6. In 1986, Mr. Gal–Or provided Pratt & Whitney, another government contractor, with lab-tested engine nozzles enhanced with flaps to control thrust. Then in 1994, he taught Pratt & Whitney experts how to increase thrust from engine nozzles.

7. In 1987, Mr. Gal–Or advised the Williams International Engine Company on how STVS technology applied to smaller jet engines.

8. In August 1986, Mr. Gal–Or provided information on small jet engines and jet nozzles to a Teledyne employee in Ohio.

9. In 1987 and 1992, Mr. Gal–Or disclosed information concerning his STVS methods to about twelve United States Air Force personnel in San Antonio, Texas.

10. In 1994, Mr. Gal–Or spoke at a National Aeronautics and Space Administration ("NASA") seminar about thrust vectoring, the subject of two of Mr. Gal–Or's patent applications. A NASA employee then caused the defendant to infringe on Mr. Gal–Or's Israeli patent applications. Other NASA employees in attendance went on to publish their own work, drawing on Mr. Gal–Or's ideas.

11. Between 1986 and 1990, Mr. Gal–Or provided information on jet engine nozzles to General Electric Aircraft Engine employees who then caused the defendant to infringe unknowingly on two of Mr. Gal–Or's Israeli patent applications.

12. In 1994, Mr. Gal–Or presented information on STVS and unmanned aircraft propulsion to the Defense Advanced Research Project Agency.

13. In 1995, Mr. Gal–Or presented information to the Pentagon and "stressed his sole rights [under various patent applications which have] been previously disclosed to defendant." Compl. at 22.

14. Throughout the summers of 1993 through 1995, Mr. Gal–Or presented the Federal Aviation Administration ("FAA") with information on how nozzle-directed, controlled thrust might apply as a safety back-up to conventional hydraulic steering on commercial aircraft. Subsequent testing confirmed Mr. Gal–Or's theories, but the FAA canceled the program due to pressure from Boeing.

Although this catalog of transfers is presented in the court's words, we believe it fairly summarizes the complaint. It is apparent that these transfers consist of plaintiff voluntarily furnishing technical data to public and private officials. Only paragraphs four, ten and eleven assert any action by the United States, directly or indirectly, which may have infringed on plaintiff's intellectual property rights. Finally, we note that only in one instance is the intellectual property referenced an interest in a United States patent, No. 5782431. The other references are to foreign or domestic patent applications or unspecified technical data rights.

It is also readily apparent that the latest date referenced in this compendium of events is 1997, which, as we discuss below, is problematic in terms of the applicable limitations period. The complaint goes further, however, and contends that the federal government continues even today to use this transferred information to develop a number of jet aircraft programs and to upgrade safety and train federal personnel.

Mr. Gal–Or concludes that these assertions support a number of different legal theories. He characterizes them as "unjust enrichment," "eminent domain," "implied or de facto easement," "intellectual property," and "simple fairness." Defendant moves to dismiss, principally on the ground that the claim is stale, having accrued, it contends, more than six years prior to the filing of the

complaint. That aspect of the motion is advanced pursuant to RCFC 12(b)(1), which addresses a lack of subject matter jurisdiction. It also moves in the alternative, under RCFC 12(b)(6), to dismiss for failure to state a claim.

## DISCUSSION

We agree with the government in its Rule 12(b)(6) motion that "unjust enrichment," "eminent domain," "implied or de facto easement," "intellectual property," and "simple fairness" do not constitute legally cognizable claims in this court and that they must be dismissed. Nevertheless, we believe that a fair reading of Mr. Gal–Or's complaint is that the government has taken his intellectual property without compensation. If Mr. Gal–Or has a valid patent which he alleges was infringed by the United States, then he could potentially state a claim under 28 U.S.C. § 1498 (2009). In addition, the court can hear claims under the Tucker Act based on the takings clause of the Fifth Amendment to the United States Constitution. 28 U.S.C. § 1498 (2009).

We are left then with a possible claim of a taking of private property without just compensation or a patent infringement claim. These cannot, for the moment at least, be dismissed under RCFC 12(b)(6).

Defendant asks us to assume that the entire claim is stale under the general limitations statute, 28 U.S.C. § 2501, which requires that actions be commenced within six years of accrual. Section 2501's six-year limit on actions against the United States is a jurisdictional requirement and cannot be waived. *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354 (Fed.Cir.2006), *aff'd*, 552 U.S. 130, 134, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008).

For the case to be timely filed, the taking or infringement must have occurred within six years of December 2009, when the complaint was filed. In the case of a taking, the limitations period begins to run when "all events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. U.S.*, 855 F.2d 1573, 1577 (Fed.Cir.1988). Additionally, Mr. Gal–Or cites *Boling v. United States* for the proposition that when gradual, ongoing damage by the defendant exists, a takings claim only accrues when "the extent of the damage is reasonably foreseeable. . . ." 220 F.3d 1365, 1371 (Fed.Cir. 2000).[2] In the case of patent infringement claims brought under 28 U.S.C. § 1498, the limitations period begins "with respect to any particular device covered by a patent . . . at the point in time when that particular device was first procured or used by the government." *Starobin v. United States*, 229 Ct.Cl. 67, 662 F.2d 747, 749 (1981).

For its untimeliness argument, defendant points to the dates in the so-called transfers, none of which are later than 1997. We do not view the transfers as the relevant dates however. These primarily consist of plaintiff's transfer of information to the government or private contractors. Plaintiff's allegations of use or taking are considerably less precise. Of the three paragraphs above identifying infringing activity, paragraph four refers to actions occurring in 1991, as to which the six year limitations period plainly has run. The infringing actions alleged in paragraphs ten and eleven contain no dates, however.

Although defendant states in its reply brief, relying on plaintiff's complaint (but without pinpoint citation), that Mr. Gal–Or knew by the late 1990's that his proprietary information had been used in government procurements, we are unable to find such a statement in the complaint. In addition, with respect to patent claims, plaintiff makes vague allegations of continuing uses, which conceivably could involve first use through other devices after 2003. Mr. Gal–Or asserts, for example, in his response brief that the government's use continues and was implicated in a number of different aircraft development programs. *See Starobin*, 662 F.2d at 749–50 (holding each particular device creat-

---

**2.** We view this citation to be of marginal relevance here. *Boling* deals with takings caused by gradual physical forces.

ed through patent infringement gives a new right to recovery).

In short, it is virtually impossible for us to meaningfully assess defendant's arguments about either untimeliness or whether the plaintiff states a cause of action without more information from plaintiff. We do not know how many patents plaintiff owns, when they were issued, what specific devices plaintiff contends infringed on these patents and when they were first procured or used. Though plaintiff, in his response brief, argues that he is unable to provide specifics as to when first use occurred because he "harbors no access to any suspected government military program or anticipated military exports to verify any accrual date with admissible evidence," [3] RCFC 9(*l*) at a minimum requires a plaintiff claiming patent infringement to "describe the patent or patents alleged to be infringed." In addition, if plaintiff is asserting a takings claim, RCFC 9(i) requires plaintiff to "identify the specific property interest alleged to have been taken by the United States."

The court has the power, under RCFC 12(e), to direct a more definite statement of a claim, if the complaint is "so vague or ambiguous that the [United States] cannot reasonably prepare a response." RCFC 12(e). We are faced with such a complaint. Accordingly, we grant defendant's motion to dismiss under RCFC 12(b)(6) for failure to state a claim with respect to Mr. Gal–Or's claims of "unjust enrichment," "eminent domain," "implied or de facto easement," "intellectual property," and "simple fairness." We deny the motion in all other respects. We direct Mr. Gal–Or to file an amended complaint, in which he should explain what property interest he owns. If it is a patent, a copy must be attached. He must identify the dates of any patent issuances and indicate whether they are foreign or domestic. Finally, he must make a good faith assertion, based on specific facts, when the claim accrued, i.e., in the case of a patent infringement, when the infringing device was first used or procured by the United States. Specifically, plaintiff is directed to allege the relevant dates for the allegations contained in numbered paragraphs ten and eleven above.

## CONCLUSION

The motion to dismiss pursuant to RCFC 12(b)(6) is granted in part with respect to claims for "unjust enrichment," "eminent domain," "implied or de facto easement," "intellectual property," and "simple fairness." It is denied in other respects. Defendant's motion to dismiss for lack of subject matter jurisdiction is denied without prejudice to reassertion after plaintiff files an amended complaint. Plaintiff's amended complaint must be filed on or before July 30, 2010.