[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12466
_____

D.C. Docket No. 1:19-cv-20071-FAM


R&R INTERNATIONAL CONSULTING LLC,

                                        Plaintiff-Appellant,

versus

BANCO DO BRASIL, S.A.,
a foreign corporation,

                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 4, 2020)

Before WILLIAM PRYOR, Chief Judge, HULL and MARCUS, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal presents issues about the Foreign Sovereign Immunities Act and

Brazilian law. In 1957, Banco do Brasil, S.A., issued a series of bonds that were

scheduled to mature in 20 years. Today, these bonds are bought and sold as collector's items. When R&R International Consulting LLC, a Florida corporation, tried to redeem some of these bonds, the Bank refused to honor them. After R&R sued, the Bank removed the action to the district court and moved to dismiss. The district court dismissed for lack of subject-matter jurisdiction and decided, in the alternative, that the bonds were no longer redeemable under Brazilian law. We conclude that the district court had subject-matter jurisdiction under the commercial-activity exception to the Act, but that the complaint is barred by the statute of limitations under Brazilian law. So we vacate in part and affirm in part.

## I. BACKGROUND

In 2018, R&R International Consulting LLC sued Banco do Brasil, S.A., in Florida state court for breaching 30 interest-bearing promissory notes. According to R&R, these "Letras Hipotecárias," which it translated as "mortgage notes," were issued by the Bank on March 8, 1957. Each note said that the Bank promised to pay the holder 5,000 cruzeiros—the currency of Brazil at the time the bonds were issued—plus interest at a rate of five percent a year. The holder could redeem a note at any branch of the Bank after the lapse of 20 years or if the note was selected in a drawing held at least once a year in Brazil's capital. The notes cited three provisions of Brazilian law: decree number 370 of May 2, 1890; law number 2,237 of June 19, 1954; and decree number 41,093 of March 6, 1957.

2

R&R alleges that it tried unsuccessfully to redeem the notes at the Bank's Miami branch in July 2015. The Bank told R&R that it first had to verify that the notes were genuine. Several months later, a Bank representative contacted R&R and confirmed that the notes were authentic. She recommended, however, that R&R present the notes to the Bank in Brazil instead of the branch in Miami, even though the notes said they could be redeemed at any Bank location. For some reason not explained in the complaint, R&R then sat on the notes for about three years without taking any further action. In July 2018, it finally sent a letter to the Bank demanding redemption. After the Bank refused, R&R brought this suit.

The Bank presents a slightly different version of events. It asserts that R&R did not even exist in 2015; according to public records, it was created in 2017 by Rodolfo Luiz Coelho, who named himself manager. It was Coelho, not R&R, who first tried to redeem the notes in July 2015. The Bank also says that it informed Coelho that the notes were worthless after his first attempt to redeem them in 2015.

The Bank removed the action to the district court and moved to dismiss the complaint. Its motion included an affidavit from a Brazilian lawyer about the legal and historical context of the Bank and the notes. The lawyer explained that the Bank was established in 1808 by the Prince Regent of Brazil, while the country was still a Portuguese colony. For over a century, it was Brazil's de facto central bank, issuing the national currency and implementing the policy of the federal

3

government. Today, the Bank no longer serves that role, but the government of Brazil still owns a majority of its shares and uses its services for various public programs.

The lawyer then explained that R&R's "mortgage notes" were actually "[c]olonization [b]onds." Law number 2,237 of 1954 authorized the federal government to work with the Bank to create a "[c]olonization [p]ortfolio," and decree number 41,093, issued by the President of Brazil in 1957, implemented the law. The goal of the colonization portfolio was to support the construction and development of settlements and infrastructure in rural areas of the country. To fund it, the government authorized the Bank to issue colonization bonds that were exempt from taxes and guaranteed by the Brazilian treasury.

Finally, the lawyer discussed why the colonization bonds were no longer redeemable and were instead sold online as collector's items. The general rule in Brazil is that all obligations are subject to a statute of limitations unless the applicable law says otherwise. Because neither the colonization bonds themselves nor the laws authorizing them mentioned they were exempt, the statute of limitations applied. And because the colonization bonds were issued in 1957, they were subject to the Brazilian Civil Code of 1916, including the 20-year statute of limitations found in article 177. So, if the colonization bonds were issued in 1957 and matured in 1977, then the statute of limitations ran 20 years later in 1997. In

4

support of his analysis, the lawyer provided a copy of a 2017 decision by the Superior Court of Justice, Brazil's highest court for non-constitutional matters, that reached the same conclusion and rejected a similar attempt to redeem a collection of colonization bonds. *Camilotti v. Banco do Brasil S/A*, S.T.J., Special Appeal No. 1.605.484 – SC (2014/0151732-8).

The district court granted the Bank's motion and dismissed R&R's complaint on three alternative grounds. First, it concluded that it lacked subject-matter jurisdiction. Because the government of Brazil owned 52.2 percent of the Bank's shares, the Bank was a "foreign state" under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603(a), (b)(2), and therefore generally immune from the jurisdiction of federal and state courts, *id.* § 1604. The district court considered whether this dispute fell under the commercial-activity exception to the Act. *Id.* § 1605(a)(2). After concluding that the Bank's issuance of the bonds was a commercial activity, however, it skipped ahead to the statute-of-limitations issue and determined that the bonds were no longer redeemable under Brazilian law. And because the bonds were no longer redeemable, the district court then decided that the Bank's refusal to honor them did not cause a direct effect in the United States, so the commercial-activity exception did not apply. Second, the district court concluded that the act-of-state doctrine precluded it from resolving the dispute. Finally, it reiterated its conclusion that the Brazilian statute of limitations

5

had run, so the complaint failed to state a claim for which relief could be granted. And even if the district court were to apply Florida's five-year statute of limitations under an alternative choice-of-law analysis, the colonization bonds would have expired even earlier, in 1982.

## II. STANDARD OF REVIEW

We review *de novo* whether a defendant is entitled to immunity under the Foreign Sovereign Immunities Act. *Mezerhane v. República Bolivariana de Venez.*, 785 F.3d 545, 548 (11th Cir. 2015). We also review *de novo* an interpretation of foreign law. *Seguros del Estado, S.A. v. Sci. Games, Inc.*, 262 F.3d 1164, 1171 (11th Cir. 2001). And we review *de novo* the dismissal of a complaint for failure to state a claim upon which relief can be granted. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

## III. DISCUSSION

We begin with the issue of jurisdiction and then turn to foreign law. Because we agree that R&R's complaint is barred by the statute of limitations, we need not address the prudential act-of-state doctrine. We also need not address whether the district court erred by relying on the Bank's translation of the colonization bonds, as R&R failed to make that argument before the district court. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

6

A. *The District Court Had Jurisdiction Under the Commercial-Activity Exception to the Foreign Sovereign Immunities Act.*

The Foreign Sovereign Immunities Act provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in" certain enumerated exceptions. 28 U.S.C. § 1604. The term "foreign state" includes "any entity . . . a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." *Id.* § 1603(a), (b)(2). The parties agree that the Bank is a "foreign state" because the government of Brazil owns 52.2 percent of its shares. The question for us is whether the Bank's activity falls within an exception to the Act.

R&R has the initial burden of establishing jurisdiction under an exception. *Devengoechea v. Bolivarian Republic of Venez.*, 889 F.3d 1213, 1221 n.9 (11th Cir. 2018). It invokes the commercial-activity exception, which provides jurisdiction in three circumstances: if "the action is based upon a commercial activity carried on in the United States by the foreign state"; if it is based "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; or if it is based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

7

R&R does not specify which circumstance applies. It states that the Bank's refusal to honor the bonds occurred in Miami, which could establish jurisdiction under the first two clauses. At the same time, it argues that the refusal to honor the bonds caused a direct effect in the United States. But the direct-effect test concerns only the third clause, when the activity at issue occurred outside the territory of the United States. Moreover, R&R provides nothing more than a bare assertion that the refusal to honor the bonds occurred in Miami.

We conclude that the only possible avenue to jurisdiction is through the third clause. In *Guirlando v. T.C. Ziraat Bankasi A.S.*, the Second Circuit explored the "metaphysical conundrum" that arises when the "act" that triggers the commercial-activity exception is an omission, such as failure to perform under a contract. 602 F.3d 69, 76 (2d Cir. 2010); *see also Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 138 (2d Cir. 2012). The court reasoned that "the failure to act is not itself an act," but "[t]he decision by a foreign sovereign not to perform is . . . an act." *Guirlando*, 602 F.3d at 76. It also concluded that, as a legal fiction, the decision not to perform "is an act in the foreign state," "not an act in the United States." *Id.* Under that persuasive reasoning, the act that would trigger the commercial-activity exception is the Bank's decision not to honor R&R's bonds. Because the Bank is a foreign state, it made that decision in Brazil, outside the territory of the United States. So only the third clause of the commercial-activity exception applies.

8

To invoke jurisdiction under the third clause, R&R must establish that the Bank's issuance of the colonization bonds in 1957 was a "commercial activity," that the Bank's refusal to honor the bonds in 2018 was "in connection with" that activity, and that the refusal "cause[d] a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Neither party disputes that R&R has satisfied the first two elements. They disagree only about the third.

R&R is correct that the Bank's decision not to honor the colonization bonds caused a direct effect in the United States. The Supreme Court faced a similar issue in *Republic of Argentina v. Weltover, Inc.*, where Argentina and its central bank had issued a series of bonds to stabilize the country's currency. 504 U.S. 607, 609 (1992). When the bonds began to mature, Argentina unilaterally extended the payment schedule. *Id.* at 610. Several bondholders, who had arranged for their bonds to be redeemed in their bank accounts in New York, sued Argentina and its central bank for breach of contract. *Id.* at 610, 619. The Supreme Court held that Argentina had caused a direct effect in the United States because "[m]oney that was supposed to have been delivered to a New York bank for deposit was not forthcoming." *Id.* at 619. Likewise, the colonization bonds promised that they could be redeemed at any of the Bank's branches, and R&R demanded payment at the Miami branch. So, as in *Weltover*, "[m]oney that was supposed to have been delivered to a [Miami] bank for deposit was not forthcoming." *Id.*

9

The district court considered *Weltover* in its analysis, but oddly reached a contrary result. It first explained that the colonization bonds were "essentially no different than the sovereign bonds in *Weltover*." Then, instead of ending its jurisdictional analysis, it considered the statute of limitations and determined that the bonds were no longer enforceable under Brazilian law. Based on that reasoning, it concluded that the decision not to honor the unenforceable bonds did not cause a direct effect in the United States, so the commercial-activity exception did not apply.

The district court erroneously conflated subject-matter jurisdiction with the statute of limitations. Whether subject-matter jurisdiction exists is a separate question from whether a complaint states a claim upon which relief can be granted. *See Bulgartabac Holding AD v. Republic of Iraq*, No. 1:08-cv-06502-RJH, 2009 WL 3113252, at *6–8 (S.D.N.Y. Sept. 30, 2009) (concluding that the plaintiff had carried its initial burden of showing that jurisdiction existed under the commercial-activity exception but then dismissing a breach-of-contract claim because of the statute of limitations); *Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*, 79 F. Supp. 2d 374, 376, 385, 388, 391 (S.D.N.Y. 2000) (concluding that a genuine question of material fact existed as to subject-matter jurisdiction but then dismissing a claim for breach of a promissory note because of the statute of limitations); *see also Chalabi v. Hashemite Kingdom of Jordan*, 503 F. Supp. 2d

10

267, 270, 273–74 (D.D.C. 2007) (concluding that jurisdiction existed under the commercial-activity exception but then dismissing tort and racketeer-influenced-and-corrupt-organizations claims because of the statutes of limitations), *aff'd*, 543 F.3d 725 (D.C. Cir. 2008). Moreover, the statute of limitations is an affirmative defense that can be forfeited or waived. *See* Fed. R. Civ. P. 8(c)(1); *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008). In contrast, "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002).

The district court erred by concluding that it lacked subject-matter jurisdiction. Because the issuance of the colonization bonds was a commercial activity and the Bank's refusal to honor those bonds caused a direct effect in the United States, jurisdiction exists under the commercial-activity exception to the Foreign Sovereign Immunities Act.

### B. R&R's Complaint Is Barred by the Statute of Limitations.

The colonization bonds were issued in 1957 and, by their terms, matured 20 years later in 1977. Neither the colonization bonds nor the laws authorizing them exempt the bonds from the general statute of limitations. Under article 177 of Brazil's Civil Code of 1916, which was in effect at the time the bonds were issued, the limitations period was 20 years. Código Civil art. 177 (Braz.), 1916. So the

11

statute of limitations ran in 1997, 20 years after maturity. When R&R tried to redeem the colonization bonds in 2018, they were no longer enforceable.

R&R makes a few arguments why the district court misinterpreted Brazilian law, but none of them is persuasive. First, it argues that the bonds never matured, so the statute of limitations never started to run. It cites decree number 370 of May 2, 1890, one of the three laws listed at the top of each bond. According to the translation provided by R&R, article 318 of decree number 370 states, "Mortgage notes do not have a fixed payment maturity: they can be paid by drawing . . . ." R&R interprets this provision to mean that the bonds it seeks to redeem from the Bank never matured, so the statute of limitations never started to run and the bonds are still enforceable. But this interpretation is plainly contradicted by R&R's own translation of the bonds, which says that the bonds will mature after 20 years. It is nonsensical that a bond would state on its face that it will mature in 20 years but then implicitly contradict itself by citing a general law from decades earlier. And it makes no sense to interpret article 318 to mean that the colonization bonds are never subject to a statute of limitations. A more plausible interpretation is that article 318 authorizes the Bank to pay off those mortgage notes that are selected in regular drawings before their anticipated maturity date.

Second, R&R contends that the district court erred by relying on the opinion of the Brazilian Superior Court of Justice in *Camilotti*. It argues that because Brazil

12

is a civil-law jurisdiction, Brazilian courts are not bound by the *Camilotti* decision, so that opinion does not resolve this appeal. But the district court did not rely exclusively on *Camilotti*; it explained that *Camilotti* was "consistent with" its findings about Brazilian law. And even if *Camilotti* is only persuasive and has no precedential effect, R&R fails to explain why it was wrongly decided or why we should not follow its reasoning.

Finally, R&R cites "the Brazilian Constitution Article V, Section XXXVI" as supposedly preventing the Brazilian government from interfering with R&R's rights as the holder of the colonization bonds. But R&R makes this argument only in passing. It does not even list the Brazilian Constitution in its table of authorities, much less provide any caselaw or secondary sources to explain the constitutional provision. So R&R abandoned this issue. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

## IV. CONCLUSION

We **VACATE IN PART** the dismissal without prejudice for lack of subject-matter jurisdiction, and we **AFFIRM IN PART** the alternative dismissal with prejudice because the complaint is barred by the statute of limitations.